## JOHN MOROCCO *v.* REX LUMBER COMPANY
### (AC 21931)

Foti, Schaller and Dupont, Js.

Argued April 29—officially released September 24, 2002

*David M. Poirot*, with whom, on the brief, was *Steven F. Meo*, for the appellant (plaintiff).

*Anne Kelly Zovas*, with whom, on the brief, was *Heather K. Klineberg*, for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff employee, John Morocco, appeals from the summary judgment rendered by the trial court in favor of the defendant employer, the Rex Lumber Company. The plaintiff claims that the court improperly ruled that his cause of action was barred by the exclusive remedy provision[1] of the Workers' Compensation Act (act), General Statutes § 31-275 et seq., and did not fall within the substantial certainty exception to the exclusivity provision as provided in *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994) (*Suarez I*). The sole issue of this appeal is whether there was a genuine issue of material fact as to whether the employer's alleged intentional actions created a situation in which the employee's injuries were substantially certain to occur. We conclude that the court correctly determined that no genuine issue of material fact exists and therefore affirm the judgment of the trial court.

The following facts, gathered from deposition testimony, affidavits and the procedural history of the case are necessary for our resolution of the plaintiff's appeal.

---

[1] General Statutes (Rev. to 1995) § 31-284 (a) provides in relevant part: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. . . ."

On or about July 19, 1996, the plaintiff was hired by the defendant as a machine operator trainee. Eventually, he was to become a machine operator to work on wood molding machines known as molders. A machine operator trainee first is taught to perform the duties of a handler. A handler feeds wood into a molding machine and stands at the end of the molder, feeding pieces of the lumber to be cut into the machine.

On July 24, 1996, the plaintiff was working as a handler, and was assisting Elmo Henderson, the operator of the molding machine. Henderson took a break from operating the molding machine to count the wood that had been cut. During that break, the machine was on and the blade was spinning. Henderson directed the plaintiff to spray the bed of the molder with a bottle of wax. The plaintiff had waxed the machine once before; however, on the previous occasion, the molder machine had been turned off. The plaintiff believed that he needed to lift a roller blade that covers a cutting blade to perform the job of waxing the machine. The plaintiff attempted to lift the guard with his left hand, but had difficulty lifting the roller guard. The plaintiff brought his right hand up to lift the protective hood covering the overhead rollers and his hand became caught in a spinning blade.

According to the plaintiff's complaint, as a result of the incident, the plaintiff suffered an amputation of the right index finger, a partial amputation of the right middle finger, lacerations to the right thumb and ring finger, a permanent partial disability of the right hand and mental anguish.

The molder machine came from the manufacturer with a protective guard to cover a portion of the first cutting blade that is not being used to cut the wood. At the time of the incident, the guard was missing from the first cutting blade and the entire blade was exposed.

Henderson testified that the cover guard had been missing since at least October, 1995, which was nine months before the incident. Mark Humphries was the second shift foreman and the supervisor who had hired the plaintiff. The court had evidence in the form of Henderson's deposition that Humphries was aware that trainees and handlers would occasionally perform the waxing procedure on machines of this type. Humphries testified in his deposition that he was not aware of any trainee or handlers with as little experience as the plaintiff performing any duties on that type of machine except for feeding lumber. Humphries testified that he had installed a guard on the molder over the cutting blade involved in the incident in the early hours of the morning following the incident.

The plaintiff's amended complaint alleged that the injury resulted from the wilful and serious misconduct of the defendant. The complaint further alleged that the defendant knew or should have known that injury to the plaintiff was substantially certain to occur as a result of the defendant's *intentional* actions, such as forcing the plaintiff to operate the molding machine when the spinning blade was unguarded, and intentionally removing the guard and prohibiting the plaintiff from using the molding machine with a suitable guard.

The defendant filed a motion for summary judgment on the basis of its special defense that the plaintiff's cause of action is barred by the exclusive remedy provision of the act, General Statutes § 31-284 (a). After two hearings and the court's denial of the plaintiff's motion to reargue, the court rendered judgment for the defendant.

The plaintiff claims that the evidence submitted in opposition to the defendant's motion for summary judgment is sufficient to raise a genuine issue of material fact concerning whether the injury was substantially

certain to have occurred because of the defendant's intentional or deliberate acts. The court concluded, however, that the plaintiff had "offered no evidence to establish a factual predicate that the defendant knew with substantial certainty that the plaintiff would be hurt . . . ."

According to Practice Book § 17-49, summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court must construe the evidence in the light most favorable to the nonmoving party, and "[t]he party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . ." (Internal quotation marks omitted.) *Mastrolillo* v. *Danbury*, 61 Conn. App. 693, 698, 767 A.2d 1232 (2001).

The standards for appellate review of a court's granting of a motion for summary judgment are well established. We must determine "whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . [T]he burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous." (Internal quotation marks omitted.) *Ramos* v. *Branford*, 63 Conn. App. 671, 677–78, 778 A.2d 972 (2001). "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." *Suarez* v. *Dickmont Plastics Corp.*, supra, 229 Conn. 105.

Workers' compensation systems ordinarily are limited to recovery in tort actions for injuries arising in

the workplace during the course of employment and compensate employees for such injuries. See *Jett* v. *Dunlap*, 179 Conn. 215, 222, 425 A.2d 1263 (1979). In most cases, the Connecticut act is a bar to independent actions filed by an employee against an employer for an injury that occurs at the workplace. See General Statutes § 31-284.

There is an exception, however, to the exclusivity provision of the workers' compensation statute. That one exception exists when the intentional tort of an employer injures an employee or when the employer has engaged in wilful or serious misconduct. *Suarez* v. *Dickmont Plastics Corp.*, supra, 229 Conn. 106. The exception gives an employee a cause of action in addition to the remedies provided by the act. Id., 117–18. "[T]he employer must have engaged in *intentional* misconduct, as that has been defined through our case law . . . directed against its employee. . . . Anything short of genuine intentional injury sustained by the employee and caused by the employer is compensable under the Act." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 533–34, 494 A.2d 555 (1985). The exception does not include accidental injuries caused by "gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, *breach of statute,* or other misconduct of the employer short of genuine intentional injury." (Emphasis in original.) Id., 536, citing *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108, 491 A.2d 368 (1985); see also *Ramos* v. *Branford*, supra, 63 Conn. App. 680.

An employee can prevail only by proving either that "the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard)." *Suarez* v. *Dickmont Plastics*

*Corp.*, 242 Conn. 255, 257–58, 698 A.2d 838 (1997) (*Suarez II*). The actual intent standard or test could produce inequities under some hypothetical situations, and it is, therefore, the substantial certainty standard that most often is used. See id., 258; see also *Ramos* v. *Branford*, supra, 63 Conn. App. 679.

"The substantial certainty test provides for the intent to injure exception to be strictly construed and still allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, supra, 229 Conn. 109–10, quoting *Gulden* v. *Crown Zellerbach Corp.*, 890 F.2d 195, 197 (9th Cir. 1989).

*Suarez I* reversed this court's ruling that affirmed a trial court's granting of the defendant's motion for summary judgment, which had been based on the exclusive remedy provision of the act. *Suarez* v. *Dickmont Plastics Corp.*, supra, 229 Conn. 100–101. The plaintiff in *Suarez I* had alleged that the defendant (1) required the plaintiff and other employees to clean a plastic molding machine while it was running, (2) refused to allow the plaintiff to use safer methods to clean the machine and (3) refused to place a protective cover on the machine. Id., 101. The plaintiff alleged that the defendant ordered those cleaning techniques to avoid paying overtime, to save time and to avoid wasting material. Id., 102. It also was alleged that the defendant had told the plaintiff that if he used safer methods to clean the machine, his employment would be terminated. Id. Our Supreme Court stated that "the defendant's [alleged] conduct constituted more than a mere failure to provide appropriate safety or protective measures, and that the plaintiff's injury was the inevitable

and known result of the actions required of him by the defendant." Id., 111.

Recently, this court, on at least two occasions, has affirmed the decisions of trial courts that ruled in favor of an employer in actions in which the plaintiff had claimed that the employer committed an intentional tort. See *Ramos* v. *Branford,* supra, 63 Conn. App. 671; *Melanson* v. *West Hartford,* 61 Conn. App. 683, 767 A.2d 764, cert. denied, 256 Conn. 904, 772 A.2d 595 (2001). In those cases, this court elaborated on the exception to the exclusivity provision of the act.

"[T]he plaintiff must allege facts to establish either that the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard). Under either theory of employer liability, however, the characteristic element [of wilful misconduct] is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Internal quotation marks omitted.) Id., 688.

The substantial certainty standard still is a subset of the intentional tort exception to the act, and intent is a vital element that the plaintiff must prove. *Ramos* v. *Branford,* supra, 63 Conn. App. 679–80. "What is being tested is not the degree of gravity of the employer's conduct, but, rather, the narrow issue of intentional versus accidental conduct." (Internal quotation marks omitted.) Id., 680–81.

With those principles in mind, we now analyze the plaintiff's claim that the court improperly granted the defendant's motion for summary judgment.

The plaintiff retained professor Igor Paul, an engineer from Massachusetts Institute of Technology, as an

expert. In support of the plaintiff's objection to the motion for summary judgment, the plaintiff submitted Paul's report,[2] in addition to excerpts from the depositions of the plaintiff and various employees of the defendant.

The crux of the plaintiff's case is that a safety guard was missing from the molder machine, the plaintiff was not made aware of safety procedures and was not adequately trained to wax the molding machine, and that those omissions were intentional actions that were substantially certain to cause injury to him. It is undisputed that the machine was missing the guard and there was testimony that the guard was missing for a substantial period of time. There was deposition testimony that the missing guard was on order.[3] Paul's report discusses the fact that this was a clear violation of the federal

[2] In its memorandum of decision dated April 5, 2001, the court states that Paul's report constitutes unsworn testimony and, as a result, cannot serve as a foundation to create an issue of fact. On April 20, 2001, the plaintiff filed a motion to reargue on the basis of his claim that the defendant's counsel had agreed to submit Paul's report for the court's review without an accompanying notarized affidavit. The plaintiff also attached to the motion an affidavit by Paul. On May 7, 2001, a hearing was held on the plaintiff's motion to reargue. On May 15, 2001, the court denied the plaintiff's motion and issued a memorandum of decision stating that "[t]he report of Igor Paul, even if awarded full evidentiary weight, provides no factual basis establishing a question of material fact as to whether the conduct of the defendant in failing to provide a guard for the cutter in a wood molding machine was either intentional or substantially certain to cause injury to the plaintiff, who was a trainee. Nothing in this report, or the other depositions which were previously considered, tends to demonstrate that the defendant knew that injury to the plaintiff was substantially certain to occur under the criteria which our Supreme Court and Appellate Court have set forth . . . ."

We note that Paul's report does not add any firsthand evidence, but contains conclusions that were based on materials submitted to him by the plaintiff. This court, therefore, considers Paul's report and the affidavit while reviewing this appeal.

[3] The testimony of employee Henderson was that during the entire nine month period that he had been employed by the defendant, the guard was missing. There also was evidence presented that the missing guard had been on order for two years.

Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651 et seq., and other safety regulations. This court and the Supreme Court, however, have stated that OSHA violations are not enough to take the resulting injury out of the exclusivity provision of the act. See *Suarez* v. *Dickmont Plastics Corp.*, supra, 229 Conn. 99; *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 91; *Ramos* v. *Branford*, supra, 63 Conn. App. 684. As noted in *Mingachos*, the act contains a provision that allows for more compensation if the injury came about as a result of an OSHA violation, which demonstrates a clear intent by the legislature to have such injuries covered by the act. See *Mingachos* v. *CBS, Inc.*, supra, 104; General Statutes § 31-307.[4] In addition, there was no indication from the evidence that the guard was missing from the molding machine with the intention to increase production.

The plaintiff also contends that an employee who had been on the job for five days should not have been instructed to wax the molding machine. The plaintiff states that he was told by Humphries that he would receive additional safety instruction when more employees were hired and that the defendant had failed to provide such instruction. This court has stated that "[f]ailure to take affirmative remedial action, even if wrongful, does not demonstrate an affirmative intent

---

[4] General Statutes § 31-307 (b) provides: "Notwithstanding the provisions of subsection (a) of this section, any employee who suffers any injury or illness caused by his employer's violation of any health or safety regulation adopted pursuant to chapter 571 or adopted by the federal Occupational Safety and Health Administration and listed in 29 CFR, Chapter XVII, after the violation has been cited in accordance with the provisions of section 31-375 or the provisions of the Occupational Safety and Health Act of 1970, 84 Stat. 1601 (1970), 29 [U.S.C. §] 658 and not abated within the time fixed by the citation, provided the citation has not been set aside by appeal to the appropriate agency or court having jurisdiction, shall receive a weekly compensation equal to one hundred per cent of the employee's average weekly earnings at the time of the injury or illness."

to create a situation that creates personal injury." *Melanson* v. *West Hartford,* supra, 61 Conn. App. 689.

It also is important to analyze the action itself that caused the plaintiff's injury. The plaintiff states that a coemployee had instructed him to wax the machine. The plaintiff admits that he previously had waxed this particular machine when it was turned off. There is no indication that the plaintiff was instructed not to turn the machine off before waxing. Unlike the allegations in *Suarez I,* there was no coercion not to employ a safer method to wax the machine and no threat that the plaintiff's employment would be terminated if he did not perform the procedure in a manner that would be considered unsafe. Cf. *Suarez* v. *Dickmont Plastics Corp.,* supra, 229 Conn. 101.

The plaintiff also agrees that a coemployee, not a manager, had instructed him to wax the machine. The acts of a coemployee, even a supervisor, are covered by the act. See *Jett* v. *Dunlap,* supra, 179 Conn. 217. The plaintiff argues that Humphries, the second shift supervisor, was aware that the molding machine had a missing safety guard. The plaintiff also argues that the waxing of the molding machine went beyond his duties and that Humphries was aware that other trainees frequently were instructed to wax machines like the one that caused the plaintiff's injury. Humphries denied that he was aware that trainees performed such tasks. The plaintiff also contends that Humphries can be considered an alter ego of the defendant because he was the supervisor for ten years, is in charge of hiring and disciplining employees, and organized the work schedule.

Our Supreme Court has stated that it has "consistently held that where a worker's personal injury is covered by the act, statutory compensation is the sole remedy and recovery in common-law tort against the

employer is barred. . . . This well-established princi-
ple is not eroded when the plaintiff alleges an inten-
tional tort by his supervisor." (Citations omitted.) Id.

The *Jett* court also stated that it is not enough for a
supervisory employee to have committed the inten-
tional act. "The correct distinction to be drawn . . . is
between a supervisory employee and a person who can
be characterized as the alter ego of the corporation. If
the assailant is of such rank in the corporation that he
may be deemed the alter ego of the corporation under
the standards governing disregard of the corporate
entity, then attribution of corporate responsibility for
the actor's conduct is appropriate. It is inappropriate
where the actor is merely a foreman or supervisor."
Id., 219.

Whether Humphries can be considered an alter ego
for the defendant is a question of fact. We do not need
to determine that issue, however, because even if
Humphries was an alter ego, there was nothing submit-
ted to the court to show that he had intended, under
the substantial certainty standard, to injure the plaintiff.
See *Suarez* v. *Dickmont Plastics Corp.*, supra, 242
Conn. 277.

The plaintiff argues that all of the issues in dispute
create issues of material fact that have to be determined
by the trier of fact. The plaintiff also argues that the
combined effect of not providing a safety guard and
the lack of sufficient safety training created a situation
that would allow a trier of fact to find that the employer
had been substantially certain that the plaintiff's injury
would occur. We do not agree.

"A wrongful failure to act to prevent injury is not the
equivalent of an intention to cause injury." *Melanson*
v. *West Hartford*, supra, 61 Conn. App. 689 n.6. An
employers' "intentional, wilful or reckless violation of
safety standards established pursuant to federal and

state laws"; *Ramos* v. *Branford*, supra, 63 Conn. App. 678; is not enough to extend the intentional tort exception for the exclusivity of the act. Id. The employer must believe the injury was substantially certain to occur. *Melanson* v. *West Hartford*, supra, 690. The best the plaintiff can show is that the defendant failed to provide a safe work environment.

The plaintiff has failed to establish the factual predicate that the defendant or any alter ego of it knew with substantial certainty that the plaintiff would be hurt or that there was an affirmative intent to create a situation to harm the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.