******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

QUINTINO DININO, JR. *v.* FEDERAL EXPRESS
CORPORATION ET AL.
(AC 38798)

Alvord, Prescott and Pellegrino, Js.

*Syllabus*

The plaintiff, who sustained personal injuries while at work, sought to
recover damages for wilful misconduct by the defendant F Co., his
employer, and for negligence by the defendant H, his coworker. The
plaintiff's injuries resulted when he fell into a gap between the truck
that he was unloading, which had been parked by H, and the loading
dock. F Co. and H each filed motions for summary judgment based on
the exclusivity provision of the Workers' Compensation Act (§ 31-293a),
which provides that the act is the exclusive remedy for injured employees
and that no civil action may be brought against an employer or coworker.
The trial court granted the motions for summary judgment in favor of
each defendant, and the plaintiff appealed to this court. On appeal, the
plaintiff claims that the trial court improperly granted summary judg-
ment when it concluded that there were no genuine issues of material
fact regarding the applicability of two exceptions to the act's exclusivity
provision: the motor vehicle exception if the action is based on a cowork-
er's negligence in the operation of a motor vehicle, and the substantial
certainty exception for an employer's intentional tort. *Held*:

1. Contrary to the plaintiff's claim that H's improper parking of the truck
   negligently caused the plaintiff's injuries, the trial court properly con-
   cluded that there was no genuine issue of material fact regarding the
   applicability of the motor vehicle exception to the exclusivity provision
   of the act, which allows an injured employee to bring an action against
   a coworker if the action is based on the fellow employee's negligence
   in the operation of a motor vehicle: at the time of the plaintiff's injury,
   H was not operating the truck within the meaning of § 31-293a because
   he had parked and exited the truck before the plaintiff began unloading
   it and the truck remained parked during the unloading process, the
   relevant inquiry being whether the plaintiff's injury occurred as a result
   of H's movement of the vehicle or a circumstance resulting from its
   movement, and the fact that the engine may have been running when
   the plaintiff was injured was not sufficient to trigger the exception;
   furthermore, the truck was not performing the function of an ordinary
   vehicle when the plaintiff's accident occurred, in that it was parked
   and being used as a storage facility for the containers that needed to
   be unloaded.

2. The trial court properly concluded that there was no genuine issue of
   material fact regarding the applicability of the substantial certainty
   exception to the exclusivity provision of the act, which requires the
   showing that the defendant intentionally created a dangerous condition
   that made the plaintiff's injuries substantially certain to occur, and
   therefore, properly granted summary judgment in favor of F Co.: the
   plaintiff did not offer facts that tended to demonstrate that other F Co.
   employees had been injured in a similar manner at the loading dock or
   that suggested that F Co. knew of any such injuries, nor did the plaintiff
   offer any evidence that showed F Co. was aware of the potential hazard
   created by the gap between the truck and the loading dock on the night
   of the accident; furthermore, even if F Co. had modified the loading
   dock by eliminating certain safety precautions as alleged by the plaintiff,
   any such intentional, wilful, or reckless safety violations by an employer
   do not rise to the level of intent required under the substantial cer-
   tainty standard.

Argued April 24—officially released September 12, 2017

*Procedural History*

Action to recover damages for, inter alia, the named
defendant's wilful misconduct and the defendant Ernest
Hawkins' negligence, and for other relief, brought to

the Superior Court in the judicial district of Hartford, where the court, *Miller, J.*, granted the motion to intervene as a plaintiff filed by the named defendant; thereafter, the court, *Hon. Constance L. Epstein*, judge trial referee, granted the motion for summary judgment filed by the defendant Ernest Hawkins and rendered judgment thereon; subsequently, the court, *Peck, J.*, granted the named defendant's motion for summary judgment and rendered judgment thereon, from which the named plaintiff appealed to this court. *Affirmed.*

*Dana M. Hrelic*, with whom was *Kimberly A. Knox*, and, on the brief, *James J. Walker*, for the appellants (named plaintiff).

*Brian Tetreault*, with whom, on the brief, was *Cristin E. Sheehan*, for the appellee (named defendant).

*Laura Pascale Zaino*, with whom, on the brief, were *Kevin M. Roche, Rachel J. Fain*, and *Logan A. Forsey*, for the appellee (defendant Ernest Hawkins).

*Opinion*

PRESCOTT, J. It is well established that the Workers' Compensation Act, General Statutes § 31-275 et seq. (act), provides the exclusive remedy for most workers injured in the course of their employment. This appeal arises out of an action by the plaintiff, Quintino DiNino, Jr., in which he alleges that his employer, Federal Express Corporation (FedEx) and his coworker, Ernest Hawkins, are liable for injuries that he suffered in a work related accident. The plaintiff appeals from the trial court's granting of two separate motions for summary judgment in favor of each defendant. On appeal, the plaintiff claims that the trial court improperly rendered summary judgment because it erroneously concluded that there were no genuine issues of material fact regarding the applicability of two recognized exceptions to the exclusivity provision of the act. We disagree and, accordingly, affirm the judgment of the trial court.

The record, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts. At the time of the incident, the plaintiff was employed as a material handler by FedEx. During the course of the plaintiff's employment with FedEx, he was tasked with unloading heavy containers from the back of delivery trucks onto loading docks. The trucks were equipped with airlift roller conveyor systems meant to facilitate the transfer of the containers. The airlift roller conveyor systems made it impossible for the trucks to back up flush to the loading docks, which left a gap between the edge of the loading docks and the rear of the trucks.

On July 18, 2011, the plaintiff was working at FedEx's loading dock in East Granby, when the last delivery truck of the night pulled into the loading dock. Hawkins, the driver of the truck in question, was returning from a trip during which he picked up materials. Hawkins parked the vehicle just short of the loading dock, leaving a larger than normal gap between the dock and the truck. The plaintiff noticed his supervisor spread his hands apart and shake his head upon noticing Hawkins' improper parking of the delivery truck, signaling that the gap was too large. The plaintiff, who was tasked with unloading that particular delivery truck, did not express concern regarding the size of the gap to any of his coworkers, and no steps were taken by the plaintiff's supervisor or Hawkins to reposition the truck.

Shortly thereafter, while moving a container off the truck, the plaintiff fell into the gap between the truck and the loading dock. The container subsequently rolled onto and crushed the plaintiff's right leg, fracturing his tibia and fibula. The plaintiff also suffered an extensive degloving of the soft tissue in his lower right leg, requiring skin flap replacement and skin grafting. The plaintiff subsequently received workers' compensation benefits

under the act for his injuries.

The plaintiff commenced the present action on April 8, 2013. The operative complaint contained two counts. In the first count, the plaintiff alleged that FedEx had been "warned of the significant safety hazard presented by the open gaps/spaces by its own agents, servants, and/or employees," but nevertheless "consciously and deliberately chose not to utilize dock boards, dock plates, dock levelers or any other appropriate safety devices to eliminate the significant safety hazard presented by the open gaps/spaces between the truck trailers and the loading dock." The plaintiff also alleged that FedEx's failure to follow proper safety guidelines constituted a violation of the standards of the Occupational Safety and Health Act (OSHA), 29 CFR 1910.22 (c), and that FedEx's "actions and/or omissions created a substantial certainty that the plaintiff would be injured . . . ."

In the second count, the plaintiff alleged that Hawkins "failed to properly position his truck in the loading dock by stopping the truck too far away from the edge of the loading dock and thereby leaving an unsafe space or gap between the rear of the truck and the loading dock . . . ." The plaintiff also alleged that Hawkins "failed to warn the material handlers, including the plaintiff, that he had stopped the truck farther away from the loading dock than was normal" and that the plaintiff's injuries were a direct and proximate result of defendant Hawkins' negligent operation of the delivery truck.

On February 18, 2015, FedEx filed a motion for summary judgment and accompanying memorandum of law, in which it asserted, inter alia, that it is immune from liability pursuant to the exclusivity provision of the act. FedEx also denied that it intentionally had created a dangerous condition that made the plaintiff's injuries substantially certain to occur, which, if established by the plaintiff, would constitute an exception to the exclusivity provision.

On March 2, 2015, Hawkins filed a separate motion for summary judgment. In his accompanying memorandum of law, Hawkins asserted that the plaintiff's claims against him were similarly barred by the exclusivity provision of the act and, further, that the plaintiff's injuries did not arise out of Hawkins' negligent operation of a motor vehicle so as to fall within the recognized motor vehicle exception to the exclusivity provision.

The plaintiff filed an objection and accompanying memorandum of law in response to FedEx's motion for summary judgment, in which he argued that his injuries were a "substantially certain result" of FedEx's various "bad choices" regarding proper safety procedure, and, therefore, fell within a recognized exception to the exclusivity provision. The plaintiff also filed an objec-

tion and accompanying memorandum of law in response to Hawkins' motion for summary judgment, arguing that Hawkins had been operating the delivery truck when the plaintiff was injured and, therefore, could be held liable for his negligence.

On August 17, 2015, the court, *Hon. Constance L. Epstein*, judge trial referee, heard oral argument on Hawkins' motion for summary judgment. The court issued a memorandum of decision on December 18, 2015, granting Hawkins' motion and holding, as a matter of law, that the plaintiff's injuries were not caused by Hawkins' negligent operation of the delivery truck because the truck's ignition had been turned off and the truck remained immobile when the incident occurred. The court, therefore, concluded that the exclusivity provision barred the plaintiff's claim against Hawkins.

FedEx's motion for summary judgment was heard on September 8, 2015. The court, *Peck, J.*, issued a memorandum of decision on December 30, 2015, granting summary judgment in favor of FedEx. The court concluded that the plaintiff had not raised a genuine issue of material fact regarding whether FedEx had intentionally created unsafe working conditions that made the plaintiff's injuries substantially certain to occur. Specifically, the court concluded that the plaintiff had failed to provide evidence, other than conclusory statements, that he had fallen into the gap previously; witnessed any of his coworkers suffer an injury after falling in the gap; or complained to his supervisor that the width of the gap was unsafe. The court further held that noncompliance with OSHA standards does not give rise to employer liability in Connecticut. Thus, the court held that the exclusivity provision barred the plaintiff's action against FedEx.

The plaintiff filed the present appeal, challenging both trial court judgments. Additional facts and procedural history will be set forth as necessary.

We begin by identifying the applicable standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the

existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 115–16, 49 A.3d 951 (2012).

Pursuant to the act, a party injured in the course of his employment is entitled to benefits and compensation regardless of fault, and such compensation shall be the exclusive remedy of the injured employee, with no civil action available against an employer. General Statutes § 31-284. General Statutes § 31-293a further provides that no civil action may be brought against an allegedly negligent coworker, by extension. These are commonly referred to as the exclusivity provisions of the act.

The rationale underlying the exclusivity provision is as follows: "The purpose of the [act] . . . is to provide compensation for injuries arising out of and in the course of employment, regardless of fault. . . . Under the statute, the employee surrenders his right to bring a common law action against the employer, thereby limiting the employer's liability to the statutory amount. . . . In return, the employee is compensated for his or her losses without having to prove liability. . . . In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for *relatively quick* and certain compensation. . . . The intention of the framers of the act was to establish *a speedy*, effective and inexpensive method for determining claims for compensation." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 672, 748 A.2d 834 (2000).

There are, however, certain exceptions to the exclusivity provision. Two, in particular, are at issue in this case. The first is a statutory exception set out in § 31-293a, commonly referred to as the "motor vehicle exception." Specifically, § 31-293a allows an injured employee to bring an action against a coworker if the action is "based on the fellow employee's negligence in the *operation* of a motor vehicle as defined in section 14-1." (Emphasis added.)

The second exception at issue in this case is the "substantial certainty" exception. In *Jett* v. *Dunlap*, 179 Conn. 215, 425 A.2d 1263 (1979), our Supreme Court recognized an exception to the exclusivity provision for intentional torts of an employer. Id., 219. Subsequently, in *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 639 A.2d 507 (1994) (*Suarez I*), and *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 698 A.2d 838 (1997) (*Suarez II*), the court expanded the intentional tort exception to the exclusivity provision to include circumstances in which "either . . . the

employer *actually intended* to injure the plaintiff (actual intent standard) or . . . the employer intentionally created a dangerous condition that made the plaintiff's injuries *substantially certain* to occur (substantial certainty standard)." (Emphasis added.) *Suarez II*, supra, 257–58. Having set out the two relevant exceptions to the exclusivity provision, we now turn to the plaintiff's specific claims on appeal.

I

The plaintiff's first claim on appeal is that the court improperly determined, as a matter of law, that the motor vehicle exception to the exclusivity provision of the act did not apply and that the plaintiff's action against Hawkins, therefore, was barred. In support of his claim, the plaintiff argues that Hawkins' improper parking of the vehicle raises a genuine issue of material fact regarding whether the plaintiff's injuries were based on Hawkins' negligent operation of the delivery truck. Hawkins maintains that he was not operating the truck within the meaning of § 31-293a, because the truck was in park and remained immobile during the incident. We agree with Hawkins.

The term "operation" is not defined by the act. Thus, we must turn to relevant precedent for guidance. Our courts have interpreted the meaning of "operation" in the context of the act, as well as with respect to the doctrine of sovereign immunity. We begin by addressing the case law analyzing the act.

In *Davey* v. *Pepperidge Farms, Inc.*, 180 Conn. 469, 429 A.2d 943 (1980), our Supreme Court stated, in addressing the motor vehicle exception, that "[w]hile it is true that 'operation' is not defined in General Statutes § 14-1,[1] the cases clearly indicate that operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle." (Footnote added.) Id., 472 n.1.

A few years later, in *Dias* v. *Adams*, 189 Conn. 354, 456 A.2d 309 (1983), it examined the legislative history of § 31-293a and stated that our legislature intended to limit the scope of the exception by "distinguish[ing] simple negligence on the job from negligence in the operation of a motor vehicle. . . . Particular occupations may subject some employees to a greater degree of exposure to that risk. The *nature* of the risk remains unchanged, however . . . ." (Emphasis added; footnote omitted; internal quotation marks omitted.) Id., 359. Our Supreme Court, therefore, concluded in *Dias* that its "decision to construe the term 'operation of a motor vehicle' in § 31-293a [to] *not* includ[e] activities unrelated to movement of the vehicle comports with this policy of the legislature." (Emphasis added.) Id., 360. Consequently, the court held that a backhoe was not in operation when the shovel on the backhoe

dropped suddenly and struck the decedent. Id., 358.

In *Kegel* v. *McNeely*, 2 Conn. App. 174, 476 A.2d 641 (1984), this court held that if a coworker is "not engaged at the time of the fellow employee's injury in any activity related to driving or moving a vehicle or related to a circumstance resulting from the movement of a vehicle, the lawsuit does not fall within the exception of General Statutes § 31-293a." Id., 178. There, the plaintiff's decedent and the defendant were coworkers tasked with moving and stacking floating docks. Id., 176. At the time of the accident, the defendant was operating a truck cab. Id.  Attached to the rear of the truck was a crane, operated separately by a third coworker, and the decedent's job was to load and unload floating docks from a sling suspended by the boom of the crane. Id. The accident occurred after a fourth employee, acting as a ground guide, directed the defendant to back the truck into position. Id., 177. The defendant moved the truck, stopped it at the location indicated, turned the engine off, and remained in the cab with his foot on the break. Id. After the defendant stopped the vehicle, the boom of the crane came into contact with overhead wires. Id., 176. The decedent, who was holding the metal sling attached to the crane cable at the time, was immediately electrocuted upon contact. Id., 176–77.

On appeal from the trial court's directed verdict[2] for the defendant, this court concluded that the truck portion of the assembly had not been in operation when the accident occurred, because "[a]t the time of the decedent's injury, the truck, with its ignition having been turned off, could not function to move the truck itself nor did it function or move so as to change the position of the crane or its boom."[3] Id., 178. This court further concluded that "the only evidence relative to whether the defendant was operating a motor vehicle was that the truck was *immobile* at the time, with its motor off." (Emphasis added.) Id.

In *Kiriaka* v. *Alterwitz*, 7 Conn. App. 575, 509 A.2d 560, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), this court similarly concluded that the plaintiff could not maintain a cause of action against his coworker under the motor vehicle exception to the exclusivity provision. There, the plaintiff and defendant worked for a furniture company. Id., 576. The day of the accident, the defendant was driving his employer's furniture van, with the plaintiff as the passenger. Id. The defendant pulled the van over on the side of the highway and parked the vehicle, leaving its flashers on. Id. The defendant remained in the parked van as the plaintiff attempted to cross the highway. Id. The plaintiff subsequently was struck by a passing car and injured. Id.

In affirming the trial court's granting of summary judgment for the defendant, this court concluded that the plaintiff's injuries were "unconnected and unrelated to [the defendant's] control, direction and movement"

of the van. Id., 580. Because the plaintiff "proceeded, on his own, unrelated to the operation of the [van], to cross the highway," his injuries were "removed from [the defendant's] prior movement or operation of the vehicle." Id., 579.

More recently, in *Rodriguez* v. *Clark*, 162 Conn. App. 785, 788, 133 A.3d 510, cert. denied, 320 Conn. 926, 133 A.3d 879 (2016), this court held that the motor vehicle exception to the exclusivity provision did not apply in an action brought by a police officer against his coworker, for allegedly negligently operating a police cruiser. At the time of the incident, the plaintiff was in the process of arresting various individuals involved in an altercation. Id., 786. The defendant police officer arrived on the scene to provide backup, and parked his police cruiser, leaving the motor on and a window open for his trained K9 police dog. Id. The dog subsequently exited the cruiser via the open window and bit the plaintiff on his leg. Id. Much like the court in *Kiriaka*, this court agreed with the trial court's conclusion that the plaintiff's injuries were removed from the defendant's prior operation of the vehicle, because they were not causally related to the control, direction, and movement of the motor vehicle. Id.

The case before us is similar to *Kegel*, *Kiriaka*, and *Rodriguez*. In all four cases, the vehicle in question was immobile when the accident occurred. Here, the delivery truck was parked for minutes before the plaintiff began unloading it, and it remained parked during the unloading process. Furthermore, unlike the defendants in *Kegel* and *Kiriaka*, Hawkins exited the vehicle before the accident occurred, making him even more removed from its operation. We do not agree with the plaintiff that the proximity of the rear of the truck to the loading platform was enough to establish a causal relationship between Hawkins' operation of the truck and his injury sufficient to trigger the motor vehicle exception.

The plaintiff suggests in challenging the court's factual findings that there is a dispute as to whether the engine of the delivery truck was off when the incident occurred. This does not, however, raise a genuine issue of material fact that would defeat the granting of summary judgment. The law makes clear that the simple fact that the engine was on when the injury occurred is not sufficient to trigger the motor vehicle exception. In *Kegel*, *Kiriaka*, and *Rodriguez*, the engine was running when each plaintiff was injured, yet this court held that none of the defendants had been operating their respective vehicles. Instead, the relevant inquiry is whether the injury occurred as a result of Hawkins' *movement* of the vehicle or a circumstance resulting from its movement, which is simply not the case here.

We next address our court's interpretation of the term "operating" in the context of a statutory waiver

of the doctrine of sovereign immunity, because the plaintiff relies on cases decided in that context. General Statutes § 52-556 provides that "[a]ny person injured in person or property through the negligence of any state official or employee *when operating a motor vehicle* owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury." (Emphasis added.) The plaintiff argues that this court's interpretation of the phrase "when operating a motor vehicle" in *Allison* v. *Manetta*, 84 Conn. App. 535, 854 A.2d 84, cert. denied, 271 Conn. 931, 859 A.2d 582 (2004) (*Allison I*), a case regarding sovereign immunity, supports his cause of action against Hawkins.[4] We disagree.

In *Allison I*, the driver of a transportation truck was proceeding along his designated route, looking for highway maintenance problems, when he came across water rushing out of a driveway. Id., 541. He pulled his truck over so he could dig a ditch to keep the water from flowing onto the road and parked his vehicle next to the driveway on the road. Id. As the plaintiff was traveling on the road, she was hit by a tractor trailer coming from the opposite direction trying to maneuver around the truck. Id., 536–37. The plaintiff brought an action against, inter alia, the state and the truck driver. Id. The defendants filed a joint motion to dismiss the claims on the basis that the statutory waiver did not apply because the parked truck was not being operated within the meaning of § 52-556 when the plaintiff was injured. Id., 537. The trial court agreed and granted the defendants' motion to dismiss. Id. The plaintiff appealed.

On appeal, this court held that a motor vehicle is being operated within the context of § 52-556 when "there is a setting in motion of the operative machinery of the vehicle, or there is movement of the vehicle, or there is a circumstance resulting from that movement or *an activity incident to the movement of the vehicle from one place to another*." (Emphasis in original; internal quotation marks omitted.) Id., 540–41. This court further stated: "On this set of facts, we conclude, as a matter of law, that [the defendant] was operating the truck within the meaning of § 52-556. He had parked the truck as an activity incident to moving it from one place to another along his designated maintenance route to fulfill his responsibilities for the department. There was, consequently, a temporal congruence between the operation of the truck and the plaintiff's injury." Id., 541–42. Accordingly, this court reversed the trial court's dismissal of the action, and remanded the case for further proceedings. Id., 542.

Here, the plaintiff argues that, under *Allison I*, Hawkins' improper parking of the delivery truck constitutes operation of a motor vehicle. The reach of *Allison I*, however, has been limited by subsequent decisions.

In *Rodriguez* v. *State*, 155 Conn. App. 462, 110 A.3d 467, cert. granted, 316 Conn. 96, 113 A.3d 71 (2015), this court again considered the meaning of the phrase "when operating a motor vehicle" within the context of § 52-556. The plaintiffs' claims in that case arose out of an accident involving multiple vehicles. On the day of the plaintiff's motor vehicle accident, a state service patrol operator was monitoring the highway. Id., 466–67. His job was to remedy unsafe driving conditions. Id., 467. At some point during his route, the patrol operator came across debris in the road and pulled over, thereby obstructing the right lane of the highway. Id., 470. Shortly thereafter, three vehicles that had slowed approaching the debris were struck from behind by a tractor trailer. Id. A passenger in one of the cars hit by the truck was killed, and a driver of another car was badly injured. Id. The administratrix of the decedent's estate and the injured passenger each brought a personal injury action against the tractor trailer owner, its driver, the state, and the service patrol officer. Id., 466–68. A jury returned verdicts in favor of both of the plaintiffs, and the state appealed from the trial court's denial of its motions to set aside each verdict, arguing that the court had improperly instructed the jury on the scope of the state's sovereign immunity. Id., 472–73.

On appeal, this court held that the jury instructions used by the trial court constituted reversible error. Id., 490. In so doing, the court analyzed our Supreme Court's decision in *Allison* v. *Manetta*, 284 Conn. 389, 933 A.2d 1197 (2007) (*Allison II*). After this court decided *Allison I*, it had remanded the case for trial, and the plaintiff prevailed. Id., 395. The defendants appealed, and our Supreme Court transferred the appeal to itself. In *Allison II*, the state argued that the trial court should have instructed the jury that a state vehicle parked for the purposes of serving as a warning device or protective barrier was not parked "incident to travel," and thus was not being "operated" pursuant to § 52-556 Id., 399–400, citing with approval *Rivera* v. *Fox*, 20 Conn. App. 619, 624, 569 A.2d 1137, cert. denied, 215 Conn. 808, 576 A.2d 538 (1990) (holding that truck being used as warning signal to alert drivers of accident was not being operated within meaning of § 52-556). Our Supreme Court agreed, and remanded the case for a new trial. *Allison II*, supra, 400–402. Although *Allison II* did not expressly overturn this court's decision in *Allison I*, it limited its applicability considerably.

In light of our Supreme Court's decision in *Allison II*, and our decision in *Rivera*, this court concluded in *Rodriguez* that a motor vehicle is parked incident to travel only if it is parked in a convenient or ordinarily appropriate place, rather than parked for the purpose of being used as a warning device or protective barrier. *Rodriguez* v. *State*, supra, 155 Conn. App. 480. This court further concluded that the motor vehicle excep-

tion to sovereign immunity does not apply even if the state employee was *negligent* in choosing a location to park the vehicle for the purpose of using it as a warning device. Id., 481.

Thus, even if we were to ignore the fact that, in *Allison I*, this court interpreted a waiver of sovereign immunity rather than an exception to the exclusivity provision of the act, and that the language of the two statues is not identical, the holding of *Allison I* subsequently has been limited and does not control here. In *Allison I*, the defendant temporarily parked his vehicle in the middle of his designated route. In the present case, Hawkins parked the delivery truck at the *conclusion* of his run. Furthermore, Hawkins did not park the truck in a convenient or ordinary place to park, such as a parking lot—he parked it at a loading dock. Finally, as Hawkins correctly points out, the truck was not performing the function of an ordinary motor vehicle while it was parked at the loading dock. Rather, it was serving as a storage facility for the containers that needed to be unloaded. The function that the vehicle is serving at the time of the injury is significant, because this court concluded in *Rodriguez* and *Rivera* that the state's trucks were not being operated within the meaning of the waiver to sovereign immunity while they were being used as warning devices. Here, the delivery truck was similarly not performing the function of an ordinary vehicle when the plaintiff's injury occurred.

The plaintiff therefore has failed to raise a genuine issue of material fact regarding whether his injury was based on Hawkins' negligent operation of the delivery truck. Neither line of cases interpreting the meaning of "operation" counsels us to adopt the exceedingly broad definition that the plaintiff suggests. Thus, we affirm the judgment of the trial court granting Hawkins' motion for summary judgment.

## II

The plaintiff's second claim on appeal is that the court improperly granted FedEx's motion for summary judgment by concluding that there was no genuine issue of material fact regarding whether FedEx had intentionally created a dangerous working condition that made the plaintiff's injuries substantially certain to occur. The plaintiff makes a number of arguments in support of his claim, including that the cargo unloading process was inherently dangerous. Specifically, the plaintiff argues that the dock upon which he was working, dock six, was unsafe. The plaintiff further argues that FedEx knowingly and deliberately subjected him to these dangerous and unsafe conditions, as evidenced by deposition testimony of the plaintiff's coworkers that the plaintiff believes tends to show that other FedEx employees had been injured by falling into the gap between the loading dock and the back of the delivery truck. We disagree.

In support of his argument that the working conditions were inherently unsafe or dangerous, the plaintiff cites the differences between dock six and other loading docks in the facility. Specifically, the plaintiff argues that dock six was inherently dangerous because, unlike some of the other docks, dock six did not have an "extension bar," the purpose of which is to bridge the gap between the dock and the back of the truck. Without an extension bar, the dock's edge consisted of rollers, rather than stable flooring.

The plaintiff submitted an affidavit from his expert witness in opposition to FedEx's motion for summary judgment, in which his expert opined that the configuration of dock six was unsafe in three ways: "First, it did not allow for a truck to be backed up flush against the leading edge of the loading dock, as that would result in contact and binding of the horizontal steel rollers at the leading edge of the dock. . . . Second, it eliminates a safe walking surface area that workers can step on while transitioning from the rear of the truck to the loading dock, and replaces that safe walking surface area with a steel roller that cannot be stepped upon safely as that would actually cause the worker's foot to be spun back into the gap . . . . And finally, it greatly increases the danger zone that workers must negotiate while transitioning from the rear of the truck onto the loading dock . . . ." The plaintiff's expert further concluded that FedEx must have modified or removed the dock extension bar from dock six, as the dock did not appear to conform to the original manufacturer's design.

The plaintiff also cites deposition testimony of his coworkers regarding other workplace injuries in support of his argument that FedEx knew that the cargo unloading process was inherently dangerous. The plaintiff cites the deposition of coworker LeAnne Theilman, who testified that another coworker, Kathy Welch, stepped on a roller and fell "luckily on the deck, not down in between," because had she fallen in the gap, "she would have been killed." That incident, however, occurred while Welch was pulling a can off a dolly on the deck—not as a result of her falling into a gap between an unloading dock and a delivery truck. The plaintiff also cites the testimony of FedEx employee Michael Smith, who stated that he once saw a coworker's foot slip and go into the gap. There was no testimony that she was injured in this incident. The plaintiff also references testimony of coworker Kevin Kelley, who said that his supervisor told him of another incident involving a FedEx employee's foot falling into the gap. Kelley could also not recall whether his supervisor told him that the employee had been injured.

Since *Suarez I* and *Suarez II*, our Supreme Court has clarified the limited scope of the substantial certainty exception. In *Sullivan* v. *Lake Compounce Theme Park*,

*Inc.*, 277 Conn. 113, 889 A.2d 810 (2006), our Supreme Court concluded that, "[a]lthough it is less demanding than the actual intent standard, the substantial certainty standard is, nonetheless, an intentional tort claim requiring an appropriate showing of intent . . . . To satisfy a substantial certainty standard, a plaintiff must show more than that a defendant exhibited a lackadaisical or even cavalier attitude toward worker safety . . . . Rather, a plaintiff must demonstrate that his employer *believed* that its conduct was substantially certain to cause the employee harm." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 118. In other words, "[t]he substantial certainty test provides for the intent to injure exception to be *strictly construed* and still allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference . . . the employer deliberately instructed an employee to injure himself." (Emphasis added; internal quotation marks omitted.) *Suarez I*, supra, 229 Conn. 109–110, quoting *Gulden* v. *Crown Zellerbach Corp.*, 890 F.2d 195, 197 (9th Cir. 1989).

Furthermore, this court has consistently held that "[a] wrongful failure to act to prevent injury is not the equivalent of an intention to cause injury. . . . An [employer's] intentional, wilful or reckless violation of safety standards established pursuant to federal and state laws . . . is not enough to extend the intentional tort exception . . . . The employer must believe the injury was substantially certain to occur." (Citations omitted; internal quotation marks omitted.) *Morocco* v. *Rex Lumber Co.*, 72 Conn. App. 516, 527–28, 805 A.2d 168 (2002); see also *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 457–58, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003) (holding failure to teach employees proper safety procedure does not trigger substantial certainty exception). Our Supreme Court has declined to extend the substantial certainty exception even to injuries "resulting from intentional, or wilful, or reckless violations by the employer of safety standards established pursuant to federal and state laws, such as OSHA." (Internal quotation marks omitted.) *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 100, 491 A.2d 368 (1985).

The intent requirement of the substantial certainty exception is, therefore, "distinguishable from reckless behavior. . . . High foreseeability or strong probability are insufficient to establish [the requisite level of] intent. . . . Although such intent may be proven circumstantially, what must be established is that the employer knew that the injury was substantially certain to follow the employer's deliberate course of action. . . . To hold otherwise would undermine the statutory scheme and purpose of the workers' compensation law and usurp legislative prerogative." (Citations omitted.) *Martinez* v. *Southington Metal Fabricating Co.*, 101

Conn. App. 796, 801, 924 A.2d 150, cert. denied, 284 Conn. 930, 934 A.2d 246 (2007). Having established the limited scope of the substantial certainty standard, we now turn to the plaintiff's claim.

The plaintiff's recounting of his coworkers' deposition testimony fails to raise a genuine issue of material fact regarding whether FedEx believed the plaintiff's injury was substantially certain to occur. The plaintiff has offered no facts that would tend to demonstrate that other FedEx employees had been injured in a similar manner at dock six. In fact, the plaintiff does not cite, nor did any of his coworkers testify to, even one other incident in which a FedEx employee was actually *injured* after falling into the gap between the loading dock and delivery truck. Only two of the three above-mentioned incidents involved an employee slipping into the gap between a loading dock and delivery truck specifically, and in at least one of those instances, the employee was left unharmed. The third incident, referenced by Kelley, also fails to raise a genuine issue of material fact, because Kelley did not know whether the employee in question was injured. Thus, the plaintiff has not proffered any evidence that suggests that FedEx knew of any prior injuries occurring as a result of the gap at dock six, and certainly not with such frequency that it raised a genuine issue of material fact regarding whether FedEx knew that the plaintiff's injury was substantially certain to occur.

Furthermore, the plaintiff has not offered any evidence that tends to show that FedEx was aware of the potential hazard created by the gap between the truck and the loading dock on the night of the accident. Neither the plaintiff nor his coworker voiced any concerns to their supervisor, Michael Smith, regarding the gap, even though the plaintiff maintains that the gap was much larger than normal. Moreover, the plaintiff did not ask Hawkins to reposition the truck, although he had seen drivers do so in the past. Such facts, therefore, tend to demonstrate that neither the plaintiff nor FedEx understood that it was substantially certain that the plaintiff would be injured.

Additionally, the plaintiff's argument that FedEx purposely removed from dock six a factory designed safety feature—specifically, an extension bar that bridges the gap between the loading dock and the back of the delivery truck—similarly fails to raise a genuine issue of material fact regarding whether FedEx believed the plaintiff's injury was substantially certain to occur. The plaintiff and his expert, a mechanical engineer named Brian O'Donel, concluded that FedEx must have modified dock six, because it appeared to the plaintiff's expert that the dock differed from the manufacturer's design. Even if we were to accept the plaintiff's conclusion that FedEx purposely eliminated certain safety precautions, however, this court held in *Morocco*, supra,

72 Conn. App. 527, that "*intentional,* wilful or reckless" safety violations by the employer do not rise to the level of intent required under the substantial certainty standard. (Emphasis added; internal quotation marks omitted.) In fact, our Supreme Court has expressly declined to apply the substantial certainty exception to cases in which the plaintiff alleges its employer violated OSHA safety standards. *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 100.

Our conclusion is buttressed by decisions of this court in cases raising similar claims. One such case is *Sorban* v. *Sterling Engineering Corp.*, supra, 79 Conn. App. 444. There, the plaintiff worked as a machine operator, and informed his supervisor that the lathe he was working on was malfunctioning. Id., 446. The supervisor took no action other than to tell the plaintiff to "be careful" and the tool crashed into material on a rotating table, throwing a piece of material and hitting the plaintiff in the arm, causing a severe laceration and other injuries. Id. The trial court granted the defendant employer's motion for summary judgment. Id., 447. On appeal, we concluded that "there [was] no evidence that the defendant's actions were committed with the purpose of causing injury," even though the defendant failed to repair the lathe, provide adequate blocks and shield guards, and alert employees to a policy regarding use of the rotating table. Id., 457. We therefore held that "[a]lthough the defendant's failure [to act] may constitute negligence, gross negligence or even recklessness, those allegations fail to meet the high threshold of substantial certainty . . . . The combination of factors demonstrated a failure to act; however, such a failure is not the equivalent of an intention to cause injury." Id., 457–58; see also *Martinez* v. *Southington Metal Fabricating Co.*, supra, 101 Conn. App. 807 (holding substantial certainty exception did not apply where plaintiff inserted hand into machine and machine was subsequently turned on due to miscommunication with coworker because fact that plaintiff's employer knew machine was potentially dangerous did not constitute requisite level of intent required under exception).

The plaintiff argues that his case is distinguishable from *Sorban* because the malfunction of the machine in *Sorban* was a single isolated event, rather than a "regularly occurring dangerous condition such as a gap in the floor." Here, however, the plaintiff himself admitted that the gap between the loading dock and the delivery truck was larger than usual on the night he was injured—in fact, more than double the regular distance. The larger than normal gap complained of by the plaintiff is, therefore, more analogous to the onetime malfunctioning machine at issue in *Sorban* than a "regularly occurring dangerous condition" as characterized by the plaintiff. For this reason and the others discussed herein, summary judgment was properly granted in favor of defendant FedEx.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 14-1 (54) defines "motor vehicle" for purposes of the act.

[2] In his reply brief, the plaintiff in the present case notes that the plaintiff in *Kegel* survived the summary judgment phase and proceeded to trial. In light of the development of the law since *Kegel*, however, it is clear to us that the plaintiff in the present case has failed to raise a genuine issue of fact concerning whether defendant Hawkins was operating a motor vehicle within the meaning of § 31-293a.

[3] Kegel involved General Statutes (Rev. to 1981) § 31-293a. The legislature amended § 31-293a to specify that contractors' "mobile equipment such as bulldozers, powershovels, rollers, graders or scrapers, farm machinery, *cranes* . . ." did not fall under the motor vehicle exception to the exclusivity provision of the act. (Emphasis added.) This court's analysis in *Kegel*, however, is still persuasive because the issue in that case concerned movement of the truck portion of the assembly, which was operated by a separate employee, rather than the movement of the crane.

[4] We note that the wording of the statutory waiver of sovereign immunity is not identical to that of the motor vehicle exception to the exclusivity provision. The phrase "operation of a motor vehicle" and "when operating a motor vehicle," however, are sufficiently similar to warrant comparison.