## PAUL MELANSON *v.* TOWN OF WEST HARTFORD ET AL.
### (AC 20399)

Lavery, C. J., and Dranginis and Peters, Js.

684

Argued November 28, 2000—officially released February 13, 2001

*Walter R. Hampton, Jr.,* with whom was *Laura A. Klein,* for the appellant (plaintiff).

*Kevin J. O'Connor,* corporation counsel, with whom was *Patrick G. Alair,* assistant corporation counsel, for the appellee (named defendant).

*Scott M. Karsten,* with whom, on the brief, was *Nicole D. Dorman,* for the appellees (defendant James Strillacci et al.).

*Opinion*

PETERS, J. A central feature of our statutory law of workers' compensation; General Statutes § 31-275 et

seq.; is the principle of the exclusivity of workers' compensation benefits. Pursuant to General Statutes (Rev. to 1995) § 31-284,[1] an employee who is covered by workers' compensation is barred from bringing a personal injury action against his or her employer. Further, pursuant to General Statutes § 31-293a,[2] a covered employee may not bring such an action against a fellow employee unless that employee's wrongful conduct was "wilful or malicious."[3] The dispositive issue in this case is whether those statutes preclude recovery in a personal injury action brought by a police officer who, in the course of duty, was shot and injured because of the accidental discharge of a weapon fired by a fellow police officer. We agree with the trial court that the complaint in this case has not alleged facts that, if proven, would be sufficient to establish that the accidental shooting resulted from the intentional misconduct of either the town that employed the plaintiff or the police officers who directed the plaintiff's work. We therefore affirm the decision of the court granting the defendants' motions to strike the relevant counts of the complaint and the consequent rendering of judgment in the defendants' favor.

The plaintiff, Paul Melanson, a West Hartford police officer, filed an amended five count complaint to

---

[1] General Statutes (Rev. to 1995) § 31-284 (a) provides in relevant part: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees as provided under this chapter . . . ."

[2] General Statutes § 31-293a provides in relevant part: "If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. . . ."

[3] Although the statute also refers to the misconduct of a fellow employee operating a motor vehicle, no claim has been made under that clause in this case.

recover damages for the serious injuries that he sustained when he was shot by fellow officer Anthony Miele. As amended, the complaint does not allege that Miele intentionally discharged his weapon and does not name Miele as a defendant.

The complaint arises out of the following factual circumstances. On October 25, 1995, the plaintiff and Miele were members of a tactical response team that was executing a search warrant at Cidra Auto Sales in West Hartford. In the course of entering the premises and securing its occupants, Miele accidentally discharged his weapon and fired a bullet that struck the plaintiff, injuring him severely.[4]

The first count of the complaint charges the defendant town of West Hartford (town) with having responsibility for the accidental shooting because of the town's intentional misconduct or its intentional creation of a dangerous condition that caused injury to the plaintiff. Principally, the plaintiff claims that the tactical response team was so poorly managed, informed, trained, equipped and staffed that the town can be charged with having intentionally created a situation that it knew, with substantial certainty, would cause the injuries sustained by the plaintiff to occur. Further, he claims that, because each of the defendant police officers[5] should be characterized as alter egos of the town, the town itself can be charged with intentional misconduct by attribution.

[4] Although the defendants have not yet filed answers in response to the plaintiff's complaint, in their briefs they have not taken issue with these underlying facts.

[5] The police officials named as defendants are (1) James Strillacci, the chief of the town police department; (2) Stephen Lovett, the assistant chief of the same department; (3) Carl Rosensweig, a detective in the same department who was the acting commander of a special operations force; and (4) Brian Royce, a police sergeant in the same department who was the team leader of the same special operations force.

The four remaining counts charge each of the named police officials with similar misconduct. The plaintiff claims that, knowing the inadequacy of the support available to the tactical response team, each of the defendants engaged in intentional misconduct by directing the search warrant execution to go forward.

The court granted the defendants' motions to strike on the ground that the factual allegations in the complaint, if proven, were insufficient to show that any of the defendants had acted intentionally rather than negligently. The plaintiff has appealed.

Our standard of review is undisputed. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on [a motion to strike] is plenary. . . . In an appeal from the granting of a motion to strike, we must read the allegations of the complaint generously to sustain its viability, if possible . . . . We must, therefore, take the facts to be those alleged in the complaint that has been stricken and . . . construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Eskin* v. *Castiglia*, 253 Conn. 516, 522–23, 753 A.2d 927 (2000). We conclude that the court properly granted the defendants' motions to strike.

I

## LIABILITY OF THE TOWN

By statutory design, our law makes it difficult for an employee to avoid the exclusivity of workers' compensation benefits. See *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 220–21, 752 A.2d 1069 (2000).

The plaintiff in this case seeks to escape from the preclusory impact of §§ 31-284 (a) and 31-293a on the ground that the town engaged in intentional misconduct

that led to his injury. He does not dispute the proposition that, to support this argument, he must allege facts that, if proven, would establish that the town, directly or indirectly, engaged in misconduct that was "wilful or malicious."

Under the test articulated in *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 257–58, 698 A.2d 838 (1997), the plaintiff must allege facts to establish "either that the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard)." Under either theory of employer liability, however, the "characteristic element [of wilful misconduct] is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) *Dubay* v. *Irish*, 207 Conn. 518, 533, 542 A.2d 711 (1988). Because direct proof of an employer's actually intended misconduct will rarely be available, the employer's intention may be established by proof of the intentional misconduct of an employee who properly can be identified as the alter ego of the defendant employer. *Suarez* v. *Dickmont Plastics Corp.*, supra, 275.

In this appeal, the plaintiff claims that the complaint alleges a sufficient factual basis for his recovery under the substantial certainty standard and, therefore, the court improperly granted the town's motion to strike. We disagree.

## A

The plaintiff's principal argument for town liability invokes the substantial certainty standard for conduct of the town itself. He argues that a trier of fact reason-

ably could infer intentional misconduct on the part of the town because the tactical response team to which the plaintiff belonged was inadequately staffed, trained, managed and supervised, despite warnings to the town that the team might be at risk. According to the plaintiff, by failing to take affirmative remedial action, the town could be found to have "intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur . . . ." *Suarez* v. *Dickmont Plastics Corp.*, supra, 242 Conn. 258.

The plaintiff's argument is unavailing for two reasons. First, as the trial court aptly observed, the alleged town failings on which the plaintiff rests his case are allegations of misconduct that address negligence rather than intentional misconduct. Failure to take affirmative remedial action, even if wrongful,[6] does not demonstrate an affirmative intent to create a situation that causes personal injury.[7] Second, even if the allegations somehow could be stretched to encompass a claim for intentional misconduct generally, the complaint provides no factual basis for a finding that the town was substantially certain that the specific injury that the plaintiff suffered would occur. In *Suarez*, one of the employer's supervisors intentionally directed a particular employee, on several occasions, to use his bare hands to clean an industrial machine while it was still operating. Id., 260. Nonetheless, the court held that, even though the employer might be found to have created a substantial risk of injury to the employee, the

---

[6] For example, paragraphs seventeen and eighteen of the complaint contain allegations that the town "knew or should have known" that its alleged misconduct would cause injury to the plaintiff. The misconduct of which the plaintiff complains consists of a listing of the town's alleged failures to take a variety of precautionary measures. See paragraph sixteen. A wrongful failure to act to prevent injury is not the equivalent of an intention to cause injury.

[7] We agree with the court that the risk associated with the town's allegedly wrongful inaction is not the equivalent of "ordering [a] soldier to walk through a mine field all by himself just to see if it was working."

employee could not prevail in the absence of a further showing that "the employer *believed* the injury was substantially certain to follow the employer's acts or conduct . . . ." (Emphasis in original) Id., 280. The factual allegations in the plaintiff's complaint in this case cannot pass the *Suarez* test.

## B

Alternatively, the plaintiff maintains that the complaint contains sufficient factual allegations that, if proven, would permit a finding that the town bore responsibility for the conduct of the individual defendants, who should each be considered to have acted as an alter ego of the town. He claims that the town's actions were therefore sufficient to show that it knew that the plaintiff's injuries were substantially certain to occur.[8] We disagree.

First, the plaintiff's argument assumes that he has sufficiently alleged facts to enable him to pursue a remedy against the individual defendants. Later in this opinion, we conclude that the plaintiff's assumption is mistaken.

Second, even if we had concluded otherwise, the plaintiff cannot prevail under the test of alter ego liability articulated in *Jett* v. *Dunlap*, 179 Conn. 215, 219, 425 A.2d 1263 (1979). In that case, our Supreme Court held that, under the law of workers' compensation, an employer generally is not liable in common-law tort for the intentional misconduct of a supervisory employee. Id. The alter ego theory of corporate responsibility permits access to tort remedies only if the person committing the intentional tort "can be characterized as the alter ego of the corporation. If the assailant is of such rank in the corporation that he may be deemed the alter

---

[8] The plaintiff has argued alter ego liability only with regard to the substantial certainty standard.

ego of the corporation under the standards governing disregard of the corporate entity, then attribution of corporate responsibility for the actor's conduct is appropriate. It is inappropriate where the actor is merely a foreman or supervisor." Id. The *Jett* test was reaffirmed in *Suarez* v. *Dickmont Plastics Corp.*, supra, 242 Conn. 273–75. In the present case, the plaintiff's factual allegations merely describe the position of each defendant within the town police department. Such allegations do not suffice to demonstrate that any of the defendants had a determinative role within the corporate structure of the town.

For all of the reasons discussed, the court properly granted the town's motion to strike, and we therefore affirm the judgment in favor of the defendant town.

## II

## LIABILITY OF THE INDIVIDUAL DEFENDANTS

In counts two, three, four and five of his complaint, the plaintiff alleges that each of the individual defendants engaged in "wilful or malicious" misconduct that inevitably led to the plaintiff's injuries. If the plaintiff's factual allegations are sufficient, if proven at trial, to support such a theory of tort liability, the plaintiff's claims are not precluded by § 31-293a.

The plaintiff's factual allegations in these counts of the complaint do not warrant extensive discussion. The relevant allegations are identical to those contained in the first count directed against the town. Like the allegations that we found insufficient when addressed to the town, the plaintiff's complaint again describes actions that each of the defendants allegedly failed to take rather than affirmative actions that each defendant did take. The bare assertions that a defendant "knew" or "should have known, to a substantial certainty" that his own conduct was "dangerous" and "would cause

the injuries sustained by the plaintiff" do not demonstrate that any defendant was wilful or malicious in his actions.

For a contrary view, the plaintiff relies on *Nolan* v. *Borkowski*, 206 Conn. 495, 538 A.2d 1031 (1988), in which our Supreme Court described what is meant by the phrase "wilful or malicious" in § 31-293a. Quoting other cases, that court stated: "A wilful and malicious injury is one inflicted intentionally without just cause or excuse. It does not necessarily involve the ill will or malevolence shown in express malice. Nor is it sufficient to constitute such an injury that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional. . . . A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances." (Citation omitted; internal quotation marks omitted.) Id., 501.

The plaintiff seems to argue that the *Borkowski* standard is met by a bare allegation that a defendant engaged in conduct that was actually or impliedly designed to cause injury. We disagree.

A trier of fact cannot appraise the intentionality of a defendant's conduct without factual allegations that describe the nature of the conduct of which the plaintiff complains. See *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 101–102, 491 A.2d 368 (1985). Insofar as the plaintiff's complaint contains factual allegations, as we have noted in this opinion, those allegations would not, if proven, demonstrate the requisite intent or design to injure the plaintiff. Similarly, the factual allegations in the complaint do not suffice to establish that any of the

individual defendants intentionally created or crafted a plan that made injury to the plaintiff inevitable.

For all of the reasons discussed, the court properly granted the individual defendants' motion to strike, and we therefore affirm the judgment in favor of the individual defendants.

The judgment is affirmed.

In this opinion the other judges concurred.