ROBINSON, J.
**765 In this certified appeal, we consider the contours of the proof necessary, under **766 Suarez v. Dickmont Plastics Corp. , 229 Conn. 99, 111, 639 A.2d 507 (1994) ( Suarez I ), and Suarez v. Dickmont Plastics Corp. , 242 Conn. 255, 280-81, 698 A.2d 838 (1997) ( Suarez II ), for an employee to establish an employer's subjective intent to create a dangerous situation with a "substantial certainty of injury" to the employee, for purposes of avoiding application of General Statutes § 31-284 (a), the exclusive remedy provision of the Workers' Compensation Act (act), *4 General Statutes § 31-275 et seq.[1] The plaintiff, Dominick Lucenti, appeals, upon our grant of his petition for certification,[2] from the judgment of the Appellate Court affirming the trial court's grant of summary judgment in favor of the defendants, Greg Laviero and Martin Laviero Contractors, Inc. (Laviero Contractors).[3] Lucenti v. Laviero , 165 Conn. App. 429, 441, 139 A.3d 752 (2016). On appeal, the plaintiff claims that the Appellate Court improperly concluded that evidence regarding warnings to Laviero from the plaintiff and other employees about the dangers **767 posed by the use of a particular excavator, which would operate only when "rigged" to run at full throttle, did not establish a genuine issue of material fact as to whether the defendants subjectively believed that the plaintiff's subsequent injuries from the use of that excavator were substantially certain to occur. We conclude that, in the absence of any evidence demonstrating the hallmarks typical of such employer misconduct, the plaintiff has failed to establish a genuine issue of material fact with respect to the defendants' subjective beliefs. Accordingly, we affirm the judgment of the Appellate Court.
The opinion of the Appellate Court aptly sets forth the following relevant facts and procedural history. "The plaintiff claimed that he suffered various injuries on October 28, 2011, while working for Laviero Contractors. On the day of the incident, the plaintiff was replacing a catch basin. To accomplish this task, he was operating an excavator in an attempt to pull the catch basin out of the ground. During this operation, the excavator, while 'running at full throttle [slipped] off the catch basin and [swung] back and then [swung] forward,' injuring the plaintiff.
"On October 23, 2013, the plaintiff commenced this action alleging in a two count complaint that, because of the defendants' 'reckless conduct,' he suffered injuries. The defendants' alleged reckless conduct was, inter alia, 'directing that the excavator not be properly repaired prior to the incident even though [they] knew that there was a likelihood that individuals operating the equipment, including the plaintiff, would likely sustain serious bodily injuries ....' The plaintiff alleged that a temporary repair made prior to the incident made 'the excavator run at full throttle thereby making a jerking action.' After the parties conducted discovery, on October *5 14, 2014, the defendants filed a motion for summary judgment. **768 "The defendants argued that they were entitled to summary judgment because, pursuant to the exclusivity provision of the act ... the defendants were exempt from liability for civil damages. The defendants further argued that, because there was 'no wilful, malicious or intentional conduct intended to injure the [p]laintiff ... there was no exception to the exclusivity provision in this case.' In support of their argument, the defendants submitted excerpts of transcripts from two depositions given by the plaintiff, as well as an excerpt of Laviero's deposition and his affidavit. Pertinent to this appeal, Laviero stated at his deposition that he had operated the excavator a 'week or so' prior to the incident and again after the incident. Laviero also asserted that the excavator operated at 'full throttle' because it was the excavator's hydraulic system that controlled the speed of the machine and not the throttle. In his affidavit, Laviero averred that he neither intended to injure the plaintiff, nor intended to 'create a situation that would result in the [p]laintiff being injured,' and he had not ordered the excavator repaired 'between October 28, 2011, and the time of [his] subsequent operation.'
"The plaintiff filed an objection to the motion for summary judgment. In his memorandum of law, the plaintiff claimed that the defendants had 'rigged' the excavator to operate only at 'full throttle'; thus, the defendants 'intentionally created a dangerous condition that made [the] plaintiff's injuries substantially certain to occur, thereby overcoming the exclusivity rule of the [act].' In support of his argument, the plaintiff submitted an affidavit from Daniel Quick, a former Laviero Contractors employee, as well as his own affidavit and an excerpt from his deposition.
"Quick averred that he worked for Laviero Contractors for 'two seasons' as a machine operator. Quick also averred that in September, 2011, he was using the **769 excavator at issue when it malfunctioned and would only operate on idle. According to Quick, Laviero instructed a mechanic to 'rig the machine so that it could only be operated at full [throttle].' Quick also averred that he told Laviero that the excavator was 'too dangerous to operate' and, 'as rigged,' somebody would be injured.
"The plaintiff's affidavit provided additional details to support his argument. Specifically, the plaintiff averred that he had notified Laviero that the excavator ran only [at] full throttle and that this was dangerous, to which, according to the plaintiff, Laviero concurred. The plaintiff further averred that Laviero stated that he was unwilling to 'put any money into [the excavator]' because he was going to sell it. Also, the plaintiff averred that after he was injured, he spoke to a mechanic, Michael Lauder. The plaintiff attached to his affidavit a statement purportedly written by Lauder. This unsworn, but signed statement dated October 8, 2013, claimed, inter alia, that although Lauder and some other unnamed persons notified Laviero Contractors that the excavator needed to be repaired, he and the unnamed persons were 'instructed to rig the machine so the throttle would run at full speed at all times.' According to this statement, Laviero Contractors did not 'want to put money into repairs,' because it was considering selling the excavator. Finally, Lauder's purported statement provided that after the plaintiff was injured, Laviero Contractors 'instructed [Lauder] to fix [the excavator] properly,' and the excavator subsequently was sold.
"After a hearing on the motion, the court, Hon. Joseph M. Shortall , judge trial *6 referee, issued a memorandum of decision on February 23, 2015, in which it granted the defendants' motion for summary judgment on the ground that the exclusivity provision of the act barred the plaintiff's action against the defendants. The court concluded that the plaintiff could not satisfy [the substantial **770 certainty exception] to the exclusivity provision ... set forth in [ Suarez II , supra, 242 Conn. at 255, 698 A.2d 838 ], because he could not 'prove an intent on the part of the defendant[s] to create a working condition that was "substantially certain" to injure [the] plaintiff or other employees.' Specifically, the court found it significant that Laviero regularly operated the excavator at issue, including 'a week before the plaintiff's claimed injury and shortly after his injury ....' Thus, the court determined that 'there can be no genuine dispute as to whether the defendants created a condition that they believed was substantially certain to cause injury.' The court reasoned, '[h]ow could a jury conclude that ... Laviero ... intentionally created a dangerous condition that was substantially certain to cause injury to someone operating the excavator when he, himself, operated the machine on a regular basis? While it is seldom appropriate for summary judgment to enter where the material fact is the intent of [a] defendant, this is one of those rare cases in which it is appropriate.' " Lucenti v. Laviero , supra, 165 Conn. App. at 431-34, 139 A.3d 752.
The plaintiff appealed from the judgment of the trial court to the Appellate Court. Id., at 430, 139 A.3d 752. In a unanimous decision, the Appellate Court affirmed the judgment of the trial court, rejecting the plaintiff's claim that he had "presented evidence demonstrating that there was a genuine issue of material fact, namely, that the defendants 'rigged' the excavator, and this created a dangerous condition that made the plaintiff's injuries substantially certain to occur." Id., at 438, 139 A.3d 752. The Appellate Court assumed, for the sake of argument, that the plaintiff correctly asserted that "the excavator was not meant to operate at full throttle and that the excavator was dangerous," with "Quick's affidavit to buttress his argument that the defendants created a dangerous condition that made his injuries substantially certain because the **771 excavator, as modified, would only operate at full throttle." Id., at 439, 139 A.3d 752. The court nevertheless relied on its decisions in Martinez v. Southington Metal Fabricating Co. , 101 Conn. App. 796, 799-800, 924 A.2d 150, cert. denied, 284 Conn. 930, 934 A.2d 246 (2007), and Sorban v. Sterling Engineering Corp. , 79 Conn. App. 444, 445-47, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003), to conclude that the "plaintiff does not raise a genuine issue of material fact as to the 'requirement of a showing of the employer's subjective belief that the [plaintiff's] injury was substantially certain to occur' " as a result of the temporarily repaired "excavator that only operates on full throttle." Lucenti v. Laviero , supra, 165 Conn. App. at 439, 139 A.3d 752. Accordingly, the Appellate Court affirmed the trial court's grant of summary judgment in favor of the defendants. Id., at 441, 139 A.3d 752. This certified appeal followed. See footnote 2 of this opinion.
On appeal to this court, the plaintiff argues that the testimony and affidavits submitted in opposition to the defendants' motion for summary judgment establish a genuine issue of material fact regarding the question of whether the defendants knew that "rigging" the excavator was a dangerous act substantially certain to result in injury. The plaintiff emphasizes that requiring more evidence than these warnings to Laviero by Quick and the plaintiff will make the substantial certainty exception meaningless, as it would mean that *7 "[o]nly in the unimaginable case, when an employer admits that he intended an injury, could a plaintiff survive summary judgment." To this end, the plaintiff contends that the Appellate Court's analysis has "functionally overruled" this court's decision in Suarez I , supra, 229 Conn. at 111, 639 A.2d 507, insofar as that decision allows the fact finder to infer "the subjective intent of the employer from the totality of the circumstances surrounding an employee's injury." **772 In response, the defendants, relying on, among other cases, Suarez II , supra, 242 Conn. at 257-58, 698 A.2d 838, and Mingachos v. CBS, Inc. , 196 Conn. 91, 100-101, 491 A.2d 368 (1985), contend that the Appellate Court's decision was consistent with existing case law, under which the substantial certainty exception is narrowly construed and requires intentional conduct, rather than mere negligence or recklessness. In particular, the defendants rely heavily on Stebbins v. Doncasters, Inc. , 263 Conn. 231, 234, 819 A.2d 287 (2003), and Martinez v. Southington Metal Fabricating Co. , supra, 101 Conn. App. at 802-804, 924 A.2d 150, and argue that the substantial certainty exception requires evidence that the employer subjectively intended to engage in conduct that was substantially certain to injure the employees.[4] The defendants assert that there is no evidence in the record of an intent to injure the plaintiff through use of the "rigged" excavator, as demonstrated by the fact that Laviero expressly denied any such intention and personally operated the excavator both before and after the plaintiff's injury. The defendants also emphasize that the plaintiff personally elected to use the excavator in question, despite the fact that he was in charge on the job site, had access to other excavators, and could have chosen a different method by which to remove the catch basin. We agree with the defendants and conclude that the Appellate Court properly determined that the evidence set forth in the record did not give rise to a genuine issue of material fact with respect to the substantial certainty exception to workers' compensation exclusivity under § 31-284 (a).
"The standard of review of a trial court's decision granting summary judgment is well established.
**773 Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Cefaratti v. Aranow , 321 Conn. 637, 645, 138 A.3d 837 (2016). "The courts are in entire agreement that the moving party ... has the burden of showing the absence of any genuine issue as to all the material facts .... When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue.... Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) State Farm Fire & Casualty Co. v. Tully , 322 Conn. 566, 573, 142 A.3d 1079 (2016). "Our review of the trial court's decision to grant the defendant's *8 motion for summary judgment is plenary.... On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) Cefaratti v. Aranow , supra, at 645, 138 A.3d 837.
By way of background, we observe that this court has consistently "interpreted the exclusivity provision of the [a]ct ... as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious **774 misconduct." Suarez I , supra, 229 Conn. at 106, 639 A.2d 507. This exclusivity represents a balancing of interests, insofar as the purpose of the act "is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer.... The act is to be broadly construed to effectuate the purpose of providing compensation for an injury arising out of and in the course of the employment regardless of fault.... Under typical workers' compensation statutes, employers are barred from presenting certain defenses to the claim for compensation, the employee's burden of proof is relatively light, and recovery should be expeditious. In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." (Citations omitted; internal quotation marks omitted.) Mingachos v. CBS, Inc. , supra, 196 Conn. at 97, 491 A.2d 368 ; see also Suarez I , supra, at 124, 639 A.2d 507 (Borden, J. , concurring and dissenting) ("in determining whether an employee has sufficiently established his employer's belief that he will be injured, we are not faced with a choice of leaving the employee without any compensation for his work related injuries by holding him to a strict standard"). Put differently, "[a] damage suit as an alternative or additional source of compensation, becomes permissible only by carving a judicial exception in an uncarved statute.... Neither moral aversion to the employer's act nor the shiny prospect of a large damage verdict justifies interference with what is essentially a policy choice of the [l]egislature." (Internal quotation marks omitted.) Mingachos v. CBS, Inc. , supra, at 106, 491 A.2d 368. The "principle of exclusivity is not eroded ... when the plaintiff alleges an intentional tort, in which case an employee is permitted to pursue remedies beyond those contemplated by the act." Suarez I , supra, at 115, 639 A.2d 507.
This court first recognized this narrow intentional tort exception to workers' compensation exclusivity in **775 Jett v. Dunlap , 179 Conn. 215, 425 A.2d 1263 (1979). See Suarez I , supra, 229 Conn. at 106-107, 639 A.2d 507. In Jett , this court exempted from workers' compensation exclusivity an employer's tortious act of intentionally directing or authorizing another employee to assault the injured party. Jett v. Dunlap , supra, at 218, 425 A.2d 1263.
Moving beyond actual intent to injure, in Mingachos v. CBS, Inc. , supra, 196 Conn. at 100-101, 491 A.2d 368, this court declined to extend Jett 's intentional tort exception to the workers' compensation exclusivity provision to situations in which an injury resulted from the employer's intentional, wilful, or reckless violations of safety standards as established pursuant to federal or state laws. Instead, this court held in Mingachos : "To bypass the exclusivity of the act, the intentional or deliberate ... conduct alleged must have been *9 designed to cause the injury that resulted." Id., at 102, 491 A.2d 368. This court noted that "the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent." (Internal quotation marks omitted.) Id., at 103, 491 A.2d 368. Accordingly, this court concluded in Mingachos that reckless misconduct differs from intentional misconduct, and that the employee must establish that the employer knew that injury was substantially certain to follow its deliberate course of action. Id.
This court elaborated on the contours of this substantial certainty standard as an alternative method of proving intent in Suarez I and Suarez II , which arose from amputation injuries suffered by an employee who claimed that his foreman had forced him to clean out plastic molding machines while those machines were still running, and forbade him and other employees from using safer cleaning methods under threat of termination of their employment, despite the risk of injury to their hands. Suarez I , supra, 229 Conn. at 101, 639 A.2d 507. Specifically, the employee alleged that the foreman, as the alter ego of the employer, knew the dangers involved with **776 cleaning the machines, but had told him that he could not use a safer method, such as a stick to reach in, because (1) it would waste material, (2) the operator would lose time, and (3) if he used a safer method, he would be fired. Id., at 102, 639 A.2d 507. The employee further alleged that the foreman had ordered him to clean the machine during production, "so that the employer could avoid paying personnel overtime." Id., at 103, 639 A.2d 507. The employee appealed from the trial court's grant of the employer's motion for summary judgment on the ground that the exclusivity provision of the act barred his claim, because he had introduced no evidence that the employer intended to injure him. Id., at 101-102, 639 A.2d 507.
In applying this substantial certainty exception to the facts of Suarez I , this court further defined the terms of the doctrine, concluding that, "intent refers to the consequences of an act ... [and] denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it.... A result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue.... An intended or wilful injury does not necessarily involve the ill will or malevolence shown in express malice, but it is insufficient to constitute such an [intended] injury that the act ... was the voluntary action of the person involved.... Both the action producing the injury and the resulting injury must be intentional.... [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances.... The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act.... The known danger involved must go from being a foreseeable risk which a reasonable man would avoid and become a substantial certainty....
**777 "The substantial certainty test differs from the true intentional tort test but still preserves the statutory scheme and the overall purposes of the act. The problem with the intentional tort test, i.e., whether the employer intended the specific injury, appears to be that it allows employers to injure and even kill employees and suffer only workers' compensation damages so long as the employer did not specifically intend to hurt the worker.... Prohibiting a civil action in such a case would allow a corporation to cost-out an investment decision *10 to kill workers.... The substantial certainty test provides for the intent to injure exception to be strictly construed and still allows for [an employee] to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself." (Citations omitted; internal quotation marks omitted.) Id., at 108-10, 639 A.2d 507. Ultimately, this court concluded in Suarez I that summary judgment was inappropriate in that case, and it was a jury question with respect to whether the employer's intentional conduct allowed an inference that the employer knew that the occurrence of the injury was a substantial certainty. Id., at 111-12, 639 A.2d 507.
On remand following Suarez I , a jury returned a verdict for the employee under the actual intent standard, rather than under the substantial certainty exception, and the employer then appealed to this court. See Suarez II , supra, 242 Conn. at 261 and n.2, 698 A.2d 838. In Suarez II , this court restated the substantial certainty test "to emphasize that the employer must be shown actually to believe that the injury would occur ...." (Emphasis added.) R. Carter et al., 19 Connecticut Practice Series: Workers' Compensation (2008) § 15:16. In Suarez II , this court described its decision in Suarez I as establishing an exception to workers' compensation exclusivity if the employee can prove "either that the **778 employer actually intended to injure the [employee] or that the employer intentionally created a dangerous condition that made the [employee's] injuries substantially certain to occur ...." Suarez II , supra, at 257-58, 698 A.2d 838. Although the employee in Suarez II urged this court to conclude that the employer's insistence that he clean the machines with his hands while the machines were operating, along with the reprimands and threats received by the employee when he had attempted to utilize safer cleaning methods, "served as a basis upon which the jury could have found the [employer's] specific intent to injure," the court instead concluded that such evidence "was sufficient to allow an inference that the employer knew that the occurrence of the injury was a substantial certainty" but that "it was inadequate to support a rational inference that the [employer] specifically intended for the [employee] to be injured."[5] Id., at 278, 698 A.2d 838.
In Suarez II , this court further clarified the substantial certainty exception by noting: "[P]ermitting an employee to sue an employer for injuries intentionally caused to him constitutes a narrow exception to the exclusivity of the act.... Since the legal justification for the common-law action is the nonaccidental character of the injury from the ... employer's standpoint, the common-law liability of the employer cannot ... be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious **779 and deliberate intent directed to the purpose of inflicting an injury.... What is being tested is not the degree of gravity of the employer's *11 conduct, but, rather, the narrow issue of intentional versus accidental conduct. " (Citations omitted; emphasis added; internal quotation marks omitted.) Id., at 278-79, 698 A.2d 838 ; see also id., at 279-80, 698 A.2d 838 (reiterating definition of intent from Suarez I ).
Consistent with the focus in Suarez I and Suarez II on employer knowledge and intent, it is now well established under Connecticut law that proof of the employer's intent with respect to the substantial certainty exception demands a purely subjective inquiry. See Motzer v. Haberli , 300 Conn. 733, 744-46, 15 A.3d 1084 (2011) ; Sullivan v. Lake Compounce Theme Park, Inc. , 277 Conn. 113, 118-20, 889 A.2d 810 (2006) ; Stebbins v. Doncasters, Inc. , supra, 263 Conn. at 234, 819 A.2d 287 ; Martinez v. Southington Metal Fabricating Co. , supra, 101 Conn. App. at 802-804, 924 A.2d 150 ; DaGraca v. Kowalsky Brothers, Inc. , 100 Conn. App. 781, 788-89, 919 A.2d 525, cert. denied, 283 Conn. 904, 927 A.2d 917 (2007) ; Morocco v. Rex Lumber Co. , 72 Conn. App. 516, 528, 805 A.2d 168 (2002) ; Ramos v. Branford , 63 Conn. App. 671, 680, 778 A.2d 972 (2001) ; Melanson v. West Hartford , 61 Conn. App. 683, 689-90, 767 A.2d 764, cert. denied, 256 Conn. 904, 772 A.2d 595 (2001) ; see also Bye v. Cianbro Corp. , 951 F.Supp.2d 322, 327 (D. Conn. 2013) (applying Connecticut law). Put differently, satisfaction of the substantial certainty exception requires a showing of the employer's subjective intent to engage in activity that it knows bears a substantial certainty of injury to its employees.[6]
**780 It is, however, well settled that "[i]ntent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case." Suarez I , supra, 229 Conn. at 111, 639 A.2d 507 ; see also, e.g., DeLuca v. C. W. Blakeslee & Sons, Inc. , 174 Conn. 535, 547, 391 A.2d 170 (1978) ("[a] person's intention in any regard is to be inferred from his conduct ... and ordinarily can be proven only by circumstantial evidence" [citation omitted; internal quotation marks omitted] ). Although Connecticut has an ample body of appellate case law rejecting employees' claims of entitlement to the substantial certainty exception in a variety of factual settings, this court has yet to describe the kind of evidence that would allow for an inference that an employer subjectively believed that employee injury was substantially certain to follow its actions.
In this regard, we note that the substantial certainty exception is a common feature in workers' compensation law in other jurisdictions. We find particularly instructive a series of decisions from New Jersey. Applying that state's leading decision articulating the substantial certainty test, Millison v. E.I. du Pont de Nemours & Co. , 101 N.J. 161, 178-79, 501 A.2d 505 (1985), New Jersey courts "engage in a *12 [two step] analysis. First, a court considers the conduct prong, examining the employer's conduct in the setting of the particular case.... Second, a court analyzes the context prong, considering whether the resulting injury or disease, and the circumstances in which it is inflicted on the worker, [may] fairly be viewed as a fact of life of industrial employment, or whether it is plainly beyond anything the legislature could have contemplated as **781 entitling the employee to recover only under the [New Jersey Workers' Compensation Act]." (Citation omitted; internal quotation marks omitted.) Van Dunk v. Reckson Associates Realty Corp. , 210 N.J. 449, 461, 45 A.3d 965 (2012).
With respect to the conduct prong, which is closely akin to the factual inquiry that Connecticut courts undertake in determining whether the employer knew of a substantial certainty of employee harm,[7] the New **782 Jersey Supreme Court has emphasized that "[m]ere knowledge by an employer that a workplace is dangerous does not equate to an intentional wrong.... [T]he dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework ... is not circumvented simply because a known risk later blossoms into reality. We must demand a virtual certainty." (Citation omitted; internal quotation marks omitted.) Id., at 470, 45 A.3d 965. In considering whether the totality of the circumstances indicates that the conduct prong is satisfied, New Jersey *13 courts consider factors such as: (1) prior similar accidents related to the conduct at issue that have resulted in employee injury, death, or a near-miss,[8] (2) "deliberate deceit" on the part of the employer with respect to the existence of the dangerous condition, (3) "intentional and persistent" violations of safety regulations over a lengthy period of time, and (4) affirmative disabling of safety devices. Id., at 471-73, 45 A.3d 965. With respect to decisions made to cut corners as to safety in order to save time or money, the New Jersey Supreme Court considers a "profit motive" of only "limited **783 relevance," applicable "only to critique an employer's long-term choice specifically to sacrifice employee safety for product-production efficiency." Id., at 473, 45 A.3d 965.
New Jersey's body of case law applying the factors that guide the conduct prong of the substantial certainty exception demonstrates that proof of negligent or even reckless conduct will not suffice, and only the most egregious examples of employer conduct will defeat workers' compensation exclusivity. Compare id., at 472-73, 45 A.3d 965 (conduct prong was not satisfied, despite intentional violation of federal safety regulations pertaining to work in trenches at construction site, where "on-site supervisor made a quick but extremely poor decision, candidly admitted to having been made 'out of frustration' with unfolding circumstances that morning"), Tomeo v. Thomas Whitesell Construction Co. , 176 N.J. 366, 376-77, 823 A.2d 769 (2003) (conduct prong was not satisfied where employer was "grossly negligent" and deactivated safety stop lever on snow blower and placed electrical tape over it to prevent its activation because, although employee was severely injured when he inserted his hand into blower's chute, he "knew or should have known that the propellers were operating when he inserted his hand into the chute"), and Mann v. Heil Packer , Docket No. A-1293-08T2, 2010 WL 98883, *7 (N.J. Super. App. Div. January 13, 2010) (conduct prong was not satisfied because town did not know that retrofitting of garbage truck to add riding step on back was substantially certain to cause injury where it had never been cited by regulatory or law enforcement authority, there was no concealment of risk, and previous accidents involved minor injuries from moving forward, and were not result of backing up, unlike accident that killed plaintiff), with Mull v. Zeta Consumer Products , 176 N.J. 385, 392-93, 823 A.2d 782 (2003) (reasonable jury could find that conduct prong was satisfied where employee suffered amputation injury from plastic **784 bag spooling machine that had suddenly activated when it had safety devices disengaged, employer had knowledge of prior citations from federal inspectors for failure to implement safety procedures, multiple employees had complained about machine suddenly operating without warning on multiple occasions, and plaintiff's coworker *14 previously had sustained injury), Laidlow v. Hariton Machinery Co. , 170 N.J. 602, 622-23, 790 A.2d 884 (2002) (reasonable jury could find that conduct prong was satisfied, despite lack of prior injuries, where employer left safety guard off rolling mill for speed and convenience for thirteen year period leading up to plaintiff's injury, and reinstalled it only for federal safety inspections in course of "deliberate and systematic deception," despite knowledge of close calls when unguarded machine had nearly injured plaintiff and coworker), and Millison v. E.I. du Pont de Nemours & Co. , supra, 101 N.J. at 179-83, 501 A.2d 505 (concluding that employees' occupational disease claims were not barred by workers' compensation exclusivity as matter of law because complaint included allegations that employer fraudulently concealed fact that employees suffered from asbestos related diseases to keep those employees from leaving workforce, including having company physicians falsely give employees healthy physical examination results); see also Almanzar v. C & C Metal Products, Inc. , Docket No. 07-4002, 2010 WL 1372301, *8 (D.N.J. March 31, 2010) (denying employer's motion for summary judgment because "a reasonable jury could find that the safety devices on the die casting machine were rendered essentially ineffectual by [employer's] training and instructions to its employees and, that, through the prior [federal safety] citations and prior accidents, [employer] knew of the dangerous condition and seriousness of the potential injury created when an employee was required to insert his hand into the die casting area without the machine being appropriately shut down"). **785 Other sister state cases applying the substantial certainty doctrine are consistent with the factors applied in New Jersey. Compare Turner v. PCR, Inc. , 754 So.2d 683, 691 (Fla. 2000) (genuine issue of material fact existed regarding substantial certainty exception where employer had been informed of explosion risk in writing, knew of highly explosive nature of chemical but did not disclose that to employees, and "knew of prior similar explosions with the same and similar chemicals involved in the explosion at issue"), superseded in part by Fla. Stat. § 440.11 (2009), and Helf v. Chevron U.S.A., Inc. , 203 P.3d 962, 974-75 (Utah 2009) (trial court improperly dismissed claim by employee who was rendered ill during evening shift by toxic fumes caused by open air process of neutralizing caustic sludge that violated numerous state and federal regulations, where employer allegedly did not tell employee that numerous day shift employees became ill when that process was performed earlier, failed to provide information about chemicals or treatment, and did not warn her to wear respiratory protection), with McMillin v. Mueller , 695 N.W.2d 217, 224 (S.D. 2005) (despite fact that another employee complained of difficulty breathing, which he attributed to claustrophobia, employer merely failed to follow federally approved safety plan and did not have substantial certainty that his employees would be asphyxiated upon entering into underground molasses tank because, inter alia, he lowered his own head into tank for approximately one minute, and his family members had routinely entered tank on regular basis to clean it), and Fryer v. Kranz , 616 N.W.2d 102, 107-108 (S.D. 2000) (substantial certainty exception was not satisfied in case in which employee suffered severe respiratory illness after being directed to use undiluted muriatic acid to clean floor tile grout in small, unventilated room because employer participated, and, "had he purposely intended to injure his employees by exposing them to **786 the noxious fumes, it is simply not rational to believe that he would have *15 also knowingly and deliberately exposed himself to the fumes by helping his employees clean the grout").
Connecticut's appellate case law also is consistent with New Jersey's multifactor standard, including our decisions that stand for the proposition that, although warnings to the employer regarding the safety of workplace conditions are relevant evidence,[9] they do not, without more, raise a genuine issue of material fact to defeat summary judgment with respect to whether an employer subjectively believes that its employee's injuries are substantially certain to result from its action. We find instructive both Stebbins v. Doncasters, Inc. , 47 Conn. Supp. 638, 820 A.2d 1137 (2002), which was a Superior Court decision subsequently adopted by this court in Stebbins v. Doncasters, Inc. , supra, 263 Conn. at 235, 819 A.2d 287, and the Appellate Court's decision in Sorban v. Sterling Engineering Corp. , supra, 79 Conn. App. at 444, 830 A.2d 372.
First, in Stebbins v. Doncasters, Inc. , supra, 47 Conn. Supp. at 640, 820 A.2d 1137, employees who allegedly contracted hypersensitivity pneumonitis after being exposed to contaminated airborne droplets in the workplace brought a civil action against their employer. Initially, the employer submitted documentary evidence that indicated that it harbored no belief that its actions were substantially certain to cause respiratory illness in the employees. Id., at 642, 820 A.2d 1137. In response, the employees presented evidence **787 that the employer repeatedly failed to follow certain warnings and recommendations provided by the University of Connecticut Health Center. Id., at 643, 820 A.2d 1137. The employees also introduced evidence that the employer had violated other safety rules and regulations. Id. Despite evidence that the defendant received these warnings and did not follow them, the court ultimately held that the evidence submitted by the employees proved nothing more than a mere failure to provide appropriate safety or protective measures. Id., at 644, 820 A.2d 1137. The court concluded that "[t]he [employees'] submissions may show that the [employer] exhibited a lackadaisical or even cavalier attitude toward worker safety, but are bereft of evidence from which one might reasonably and logically infer that the [employer] believed its conduct was substantially certain to cause hypersensitivity pneumonitis in these [employees]." Id. Thus, the evidence did not establish that the employer believed that its conduct was substantially certain to cause injury to the employees, and the act's exclusivity provision barred the employees' claim. Id., at 644-45, 820 A.2d 1137. Accordingly, this court subsequently concluded on appeal that the trial court properly granted the employer's motion for summary judgment. Stebbins v. Doncasters, Inc. , supra, 263 Conn. at 231, 819 A.2d 287.
Additionally, in Sorban v. Sterling Engineering Corp. , supra, 79 Conn. App. at 446, 830 A.2d 372, an employee warned his supervisor that a lathe was not working properly. In response, the supervisor told *16 the employee to be careful. Id. When the lathe malfunctioned, it threw a piece of material that broke through a safety shield guard, and struck the employee's arm, causing a severe laceration. Id. The employee presented evidence that the employer was aware that employees operated the machines without the proper safety shield guards in place. Id. Despite the fact that the injured employee had previously warned his employer of the dangerous **788 working condition, the court concluded: "Although the [employer's] failure (1) to repair the lathe, (2) to provide adequate butt blocks and shield guards, and (3) to alert employees to a policy regarding the use of the rotating table may constitute negligence, gross negligence or even recklessness, those allegations fail to meet the high threshold of substantial certainty .... The combination of factors demonstrated a failure to act; however, such a failure is not the equivalent of an intention to cause injury."[10] Id., at 457-58, 830 A.2d 372 ; see also Martinez v. Southington Metal Fabricating Co. , supra, 101 Conn. App. at 806-807, 924 A.2d 150 (testimony that employee's injuries were substantially certain to occur when employee's arm was crushed while positioning steel plate in metal bending machine was not sufficient to defeat summary judgment); DaGraca v. Kowalsky Brothers, Inc. , supra, 100 Conn. App. at 791-93, 919 A.2d 525 (expert testimony opining that **789 employer, based on its experience, had to have known of dangers of untested manholes was not sufficient to defeat summary judgment).
Turning to the record in the present case, and construing all allegations and facts in this case in the light most favorable to the plaintiff, we conclude that the evidence contained within the record does not give rise to a genuine issue of material fact as to whether the defendants subjectively believed that an injury was substantially certain to occur as a result of operating the temporarily repaired, or "rigged," excavator. Specifically, in support of their motion for summary judgment, the defendants proffered Laviero's affidavit, in which he stated that he did not intend to harm the plaintiff and did not believe that the excavator was dangerous.
*17 Lucenti v. Laviero , supra, 165 Conn. App. at 432, 139 A.3d 752. This belief was further evidenced by Laviero's statement in his deposition testimony that he personally had operated the excavator one week or so prior to the incident and again after the incident. Id.
The burden to demonstrate the existence of a genuine issue of material fact then shifted to the plaintiff, who produced two affidavits in support of his opposition to the defendants' motion: one from himself, and one from Quick, a former employee of the defendants. In Quick's affidavit, he stated that he had worked for two seasons as a machine operator. Id. He stated that he was using the excavator when it malfunctioned and would only operate at idle speed. Id. He then claimed that Laviero instructed a mechanic to rig the excavator so that it could be operated only at full throttle. Id. Quick claimed that he had informed Laviero that the excavator was "too dangerous to operate ... as rigged" because it would injure someone. (Internal quotation marks omitted.) Id. According to the plaintiff's affidavit, he claimed that he had notified the defendants that the excavator ran only at full throttle and that this was dangerous.
**790 Id., at 433, 139 A.3d 752. The plaintiff averred that Laviero had concurred, but stated that he was unwilling to put any money into the excavator because he was going to sell it. Id. Further, the plaintiff said that, after he was injured, he spoke to Lauder, a mechanic. Id. In an unsworn statement submitted to the court, Lauder claimed to have notified Laviero that the excavator needed repair, but Laviero instructed him to rig the excavator instead. Id. According to Lauder, after the incident, Laviero instructed Lauder to fix the excavator, and the excavator was sold.[11] Id.
As the previously discussed case law demonstrates, although these warnings, and Laviero's acknowledgment of a potential danger from the use of the rigged excavator, are relevant circumstantial evidence to establish the defendants' subjective intent, in and of themselves, they are insufficient to satisfy the substantial certainty exception to the exclusivity provision of the act. That exception requires employer conduct that so obviously and intentionally creates a danger to the employee that "the employer cannot be believed if it denies that it knew the consequences were certain to follow." Sorban v. Sterling Engineering Corp. , supra, 79 Conn. App. at 455, 830 A.2d 372.
For the following reasons, we conclude that the evidence in this record fails to establish the existence of a genuine issue of material fact with respect to whether **791 the defendants believed there was a substantial certainty that the rigged excavator would injure the plaintiff or any other employee. First, there is no evidence of prior accidents involving the rigged excavator causing, or nearly causing, injury or death. Second, there is no evidence of an extensive or protracted history of workplace safety violations by Laviero with respect to his motor equipment or, in particular, this excavator. Third, there is no evidence of deception on the part of the *18 defendants, particularly Laviero himself, with respect to any danger presented by the rigged excavator. In fact, the record established that Laviero knew that the plaintiff was aware of the purported danger. Thus, Laviero reasonably could presume that the plaintiff would try his best to avoid injuring himself if injury could be avoided with the exercise of due care.[12]
Additionally, the present case is distinguishable from Suarez I , the lone case in which this court determined that the evidence presented was enough to create a genuine issue of material fact as to the substantial certainty exception. Suarez I , supra, 229 Conn. at 117-18, 639 A.2d 507. Most notably, in that case, there was evidence that the employer placed its employees under significant duress **792 insofar as their foreman, as an alter ego of the employer, specifically threatened them with termination of their employment if they did not clean running machinery in an unsafe manner in order to save time and money. Suarez I , supra, 229 Conn. at 101-102, 639 A.2d 507. In contrast, there is no evidence in the present case that the defendants, as the employer, exerted significant duress or other coercive actions, beyond those ordinarily inherent to the employment relationship, upon the plaintiff such that he would conduct himself in a manner that would "support an inference that the employer deliberately instructed an employee to injure himself." Id., at 110, 639 A.2d 507. In fact, evidence to the contrary exists, insofar as the plaintiff himself testified at his deposition that, although multiple methods exist for the removal of a catch basin, the plaintiff chose to operate the rigged excavator without further protest, despite his belief that it was dangerous.[13] Although the plaintiff testified that Laviero had instructed him to use the excavator on the job at which the injury occurred, there was no evidence that Laviero had prohibited the plaintiff from using other, safer means.[14] In the absence of any evidence of deception, coercion or duress, and without other evidence of intent to injure on the part of the defendants, we decline to impute the requisite subjective intent to the defendants.[15] **793 *19 Despite viewing the evidence in the record in the light most favorable to the plaintiff, we conclude that no evidence exists to raise a genuine issue of material fact as to whether the defendants subjectively believed that, because they provided an excavator that would work only on full throttle, the plaintiff's injuries were substantially certain to occur. Rather, we agree with the Appellate Court that "[t]he defendants' rationale in having the excavator operate in such fashion may be reckless and may demonstrate a cavalier attitude toward worker safety," but that falls short of demonstrating that the defendants believed that the conduct at issue was substantially certain to cause the plaintiff harm.[16] (Internal quotation marks omitted.) Lucenti v. Laviero , supra, 165 Conn. App. at 439, 139 A.3d 752 ; see also **794 Sullivan v. Lake Compounce Theme Park, Inc. , supra, 277 Conn. at 118, 889 A.2d 810.
Finally, notwithstanding the dissenting justices' characterization of our decision as a virtual nullification of the substantial certainty exception, we note that a holding to the contrary in this case would have the effect of elevating relatively routine workplace disagreements about safety to evidence that would defeat the high bar of workers' compensation exclusivity. This represents a drastic undermining of the purpose of the act, which this court-and many others throughout the United States-have understood "to limit common-law tort actions for injuries arising out of and in the course of employment and to satisfy as many claims as possible under the ... act." Jett v. Dunlap , supra, 179 Conn. at 222, 425 A.2d 1263. It also would be inconsistent with this court's historic view of the substantial certainty exception, which we did "not believe [would] encourage significant additional litigation, for only in those rare instances when an employer's conduct allegedly falls within the very narrow exception to the act will *20 such litigation result." Suarez I , supra, 229 Conn. at 117-18, 639 A.2d 507. Accordingly, we conclude that the Appellate Court properly affirmed the judgment of the trial court, which granted the defendants' motion for summary judgment.
The judgment of the Appellate Court is affirmed.
In this opinion PALMER, McDONALD and D'AURIA, Js., concurred.

General Statutes § 31-284 (a) provides: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

We granted the plaintiff's petition for certification, limited to the following issue: "Did the Appellate Court correctly affirm the trial court's judgment that there was no issue of material fact regarding the applicability of the substantial certainty exception to the exclusivity provision of the [act]?" Lucenti v. Laviero , 322 Conn. 909, 140 A.3d 978 (2016).

Greg Laviero is the owner and principal of Laviero Contractors.

To this end, the defendants rely on sister state authority and argue that a different rule would significantly weaken the exclusive nature of the workers' compensation remedy for employment-related injuries under § 31-284 (a).

The trial court in Suarez II had submitted special interrogatories, at the employer's request, asking the jury whether the employee had proved that the employer believed that the injuries were substantially certain to occur, as well as whether the employer instructed the employee to deliberately injure himself. Suarez II , supra, 242 Conn. at 261 and n.2, 698 A.2d 838. The jury answered in the negative to the former but in the affirmative to the latter. Id. Accordingly, this court was constrained to consider only whether there was sufficient evidence to establish the employer's actual intent to injure. Id., at 277-81, 698 A.2d 838.

We note that this purely subjective inquiry is consistent with the American Law Institute's most recent understanding of the term "substantial certainty." See Restatement (Third), Torts, Liability for Physical and Emotional Harm § 1, comment (c), p. 7 (2010) ("[K]nowledge that harm is substantially certain to result is sufficient to show that the harm is intentional even in the absence of the purpose to bring about that harm. Of course, a mere showing that harm is substantially certain to result from the actor's conduct is not sufficient to prove intent; it must also be shown that the actor was aware of this."); see also id., comment (e), p. 8 ("The substantial-certainty definition of intent requires an appreciation of its limits. In those occupational-injury cases in which courts have applied the substantial-certainty test, there generally is a localized job-site hazard, which threatens harm to a small number of identifiable employees during a relatively limited period of time.").

We note that the "context prong" is "related" to the employer's conduct and may "overlap to great degree." Van Dunk v. Reckson Associates Realty Corp. , supra, 210 N.J. at 473, 45 A.3d 965. The "context prong acts as an additional check against overcoming the statutory bar to a common-law tort action. It was added to the analysis to reinforce the strong legislative preference for the workers' compensation remedy. That preference is overcome only when it separately can be shown to the court, as the gatekeeper policing the Act's exclusivity requirement, that as a matter of law an employee's injury and the circumstances in which the injury is inflicted are plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the [New Jersey Workers' Compensation Act]." (Emphasis omitted; internal quotation marks omitted.) Id., at 473, 45 A.3d 965. In New Jersey, the context prong sets a "high threshold" and "where the exclusivity [provision of the New Jersey Workers' Compensation Act] operates to foreclose tort actions against employers for reckless[ness] or gross negligence under the substantial-certainty test ... one cannot reasonably conclude that the type of mistaken judgment by the employer and ensuing employee accident that occurred on this construction site was so far outside the bounds of industrial life as never to be contemplated for inclusion in the [exclusivity provision]. While a single egregiously wrong act by an employer might, in the proper circumstances, satisfy the intentional-wrong standard, not every intentional, or indeed [wilful] violation of ... safety requirements constitutes a wrong that is plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the [New Jersey Workers'] Compensation Act." (Emphasis omitted; internal quotation marks omitted.) Id., at 474, 45 A.3d 965. In contrast to the factually-driven conduct prong, the inquiry under the context prong is a pure question of law for the court. See Laidlow v. Hariton Machinery Co., Inc. , 170 N.J. 602, 623, 790 A.2d 884 (2002).
Although we view New Jersey's context prong as a potentially useful mechanism for effectuating the legislature's intent with respect to workers' compensation exclusivity under § 31-284 (a), we need not consider at this point whether to adopt it as a matter of Connecticut law because there is no genuine issue of material fact as to the defendants' intent in the present case. We do not, however, foreclose in future cases the adoption of legal doctrine akin to New Jersey's context prong as a backstop to ensure, as a matter of public policy, that only the most egregious cases of intentional misconduct on the part of employers will avoid the bar of workers' compensation exclusivity.

We emphasize that proof of prior injuries or deaths is not necessary, and do not suggest that there is the equivalent of a "one free bite" rule in the context of workers' compensation exclusivity. "The appreciation of danger can be obtained in a myriad of ways other than personal knowledge or previous injuries. Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe." (Internal quotation marks omitted.) Laidlow v. Hariton Machinery Co., Inc. , 170 N.J. 602, 621, 790 A.2d 884 (2002). Requiring an actual accident or injury "would be tantamount to giving every employer one free injury for every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed.... It is not incumbent that a person be burned before one knows not to play with fire." (Emphasis in original; internal quotation marks omitted.) Id.

We acknowledge that objective facts, such as warnings received, may be used to discredit an employer's statement that he did not believe that any injury was substantially certain to occur as a result of his action. This is relevant circumstantial evidence on the issue of the employer's subjective intent; see, e.g., Suarez I , supra, 229 Conn. at 111, 639 A.2d 507 ; DeLuca v. C. W. Blakeslee & Sons, Inc. , supra, 174 Conn. at 547, 391 A.2d 170 ; by itself, however, it is not dispositive. If we were to hold such objective evidence irrelevant as a matter of law, an employer conceivably could avoid tort liability simply by disclaiming such a belief, even when there is circumstantial evidence that indicates otherwise. See also footnote 10 of this opinion.

We acknowledge that, in Sorban v. Sterling Engineering Corp. , supra, 79 Conn. App. at 455-56, 830 A.2d 372, the Appellate Court appeared to use an objective standard to determine entitlement to the substantial certainty exception, rather than a subjective test, stating that "to satisfy the substantial certainty test, the employee must show that a reasonable person in the position of the employer would have known that the injury or death suffered by the employee was substantially certain to follow from the employer's actions." (Emphasis added.) We rely on Sorban solely to demonstrate our body of appellate case law surrounding the relationship between evidence of warnings and the substantial certainty exception, under which warnings are relevant, but not dispositive evidence. See footnote 9 of this opinion. To the extent that Sorban employs an objective substantial certainty test, it is the single outlier in the plethora of Supreme and Appellate Court cases, decided both prior to and after Sorban , all of which utilize a subjective standard. See Motzer v. Haberli , supra, 300 Conn. at 744-46, 15 A.3d 1084 ; Sullivan v. Lake Compounce Theme Park, Inc. , supra, 277 Conn. at 118, 889 A.2d 810 ; Stebbins v. Doncasters, Inc. , supra, 263 Conn. at 234, 819 A.2d 287 ; Martinez v. Southington Metal Fabricating Co. , supra, 101 Conn. App. at 802-804, 924 A.2d 150 ; DaGraca v. Kowalsky Brothers, Inc. , supra, 100 Conn. App. at 788-89, 919 A.2d 525 ; Morocco v. Rex Lumber Co. , supra, 72 Conn. App. at 528, 805 A.2d 168 ; Ramos v. Branford , supra, 63 Conn. App. at 680, 778 A.2d 972 ; Melanson v. West Hartford , supra, 61 Conn. App. at 689-90, 767 A.2d 764 ; see also Bye v. Cianbro Corp. , supra, 952 F.Supp.2d at 327 (applying Connecticut law). Accordingly, we do not view Sorban as an accurate statement of the current law governing the substantial certainty exception, and instead follow the remainder of our well established body of case law that utilizes a subjective standard.

We acknowledge the defendants' argument that the statements contained in the plaintiff's affidavit regarding his conversation with Lauder, and the statement of Lauder attached thereto, should not be considered in opposition to the defendants' motion for summary judgment because they constitute inadmissible hearsay. See, e.g., Jaiguay v. Vasquez , 287 Conn. 323, 363, 948 A.2d 955 (2008) ("factual assertions based on inadmissible hearsay are insufficient for purposes of opposing a motion for summary judgment"). In the interest of giving the plaintiff every possible benefit of the doubt, and because the defendants did not object to the consideration of these statements in their reply memorandum filed in the trial court, we consider them in connection with the plaintiff's appeal.

We emphasize that Laviero's apparent acknowledgment of the existence of the potentially "dangerous condition" created by the excavator is relevant evidence, but does not by itself create a genuine issue of material fact as to whether the defendants subjectively believed that, because of their actions, the plaintiff's injuries were substantially certain to occur as a result of that condition. This inquiry does not focus on whether the employer believed that a workplace condition was dangerous. See Van Dunk v. Reckson Associates Realty Corp. , supra, 210 N.J. at 470, 45 A.3d 965. Put differently, the defendants, as the plaintiff's employer, could have known that the rigged excavator might be dangerous, yet also have believed either that the injury was unlikely to occur, its risk could be mitigated by the exercise of due care, or the excavator was unlikely to cause the type of injuries that the plaintiff sustained. Because the plaintiff presented no other evidence bearing on the defendant's subjective belief that the plaintiff's injuries were substantially certain to occur, the uncontroverted evidence that Laviero himself continued to use the excavator compels the conclusion that no genuine issue of material fact exists on this point.

We note that the plaintiff testified at his deposition that he owned an excavator, and that he knew the defendants owned three excavators at the time of the accident. There is no evidence that the defendants refused him permission to use another excavator instead of the rigged one. There also is no evidence with respect to whether it was feasible to bring one of those other excavators to the job site.

At his deposition, the plaintiff testified that he operated the excavator because "I was told to operate it. I worked for the guy. I operated it."

Echoed by Chief Justice Rogers, Justice Eveleigh's dissenting opinion suggests that we deem Laviero's use of the excavator to be "dispositive and, as a matter of law, demonstrates that he did not know that an injury was substantially certain to occur." Both dissenting Justices similarly suggest that we improperly discount the warnings received by Laviero in this case. Finally, Justice Eveleigh suggests that we require the presence of coercion or duress in all cases. We respectfully disagree with the dissenting Justices' understanding of this opinion. We emphasize that these are all factors that are part of the totality of the circumstances analysis, and the presence or absence of any one factor is not necessarily outcome determinative.

The plaintiff also claims, as he did before the Appellate Court, that the trial court changed the applicable legal standard by asking the rhetorical question, "[h]ow could a jury conclude that ... Laviero ... intentionally created a dangerous condition that was substantially certain to cause injury to someone operating the excavator when he, himself, operated the machine on a regular basis?" Although we agree with the plaintiff that the use of such rhetorical devices runs the risk of appearing to invade the province of the jury, that risk was nevertheless mitigated in the present case insofar as the trial court acknowledged that issues of intent are typically jury questions not appropriate for summary judgment, unless the case is like this one, with a record completely lacking such evidence. See, e.g., United Oil Co. v. Urban Redevelopment Commission , 158 Conn. 364, 376, 260 A.2d 596 (1969) ("summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions"). Thus, we agree with the Appellate Court that "[a] careful reading of the [trial] court's memorandum of decision ... demonstrates that the court was not modifying the substantial certainty standard; rather, it was merely suggesting that it would be logical to conclude that because Laviero was willing to use the excavator before and after the incident thereby potentially exposing himself to harm, the plaintiff cannot show that the defendants had the requisite intent required to overcome the exclusivity provision of the act." Lucenti v. Laviero , supra, 165 Conn. App. at 440, 139 A.3d 752.